Staples, J.,
delivered the opinion of the court.
This is an appeal from a decree rendered by the Circuit court of Pittsylvania county. The parties to the controversy are the legatees and devisees of Nathaniel Wilson deceased. The questions to be decided grow out of a contest as to the true interpretation of the testator’s will, and a proper division of his estate. Mr. Wilson, by his will executed on the 3rd of December 1847, and admitted to probate in October 1857, gave to his wife for life, subject to certain bequests in said will contained, all his real and personal estate, to be held, controlled and managed by her at her entire discretion ; and he authorized her, as her children became of age or married, to give them or either of them, including *265 Mrs. Martha C. Cabell, such part of her estate as she might think she could conveniently spare; she being the sole judge of it in every respect. At the death of his wife, he directed the whole of his estate to be equally divided among his children; such of them as had already received, or who might thereafter receive, any part of his estate, to account for it upon a division.
In conformity with the authority thus vested in her by the will, Mrs. Wilson, in the month of September 1858, divided among the children a valuable tract of land belonging to the estate ; and in December of the same year she distributed among the same parties a large number of slaves. Mrs. Cabell, however, was not permitted to participate in this division. Her share, or supposed share, both in land and slaves was designated and set apart by the persons acting as commissioners, but they were retained by Mrs. Wilson in her own possession, used and enjoyed by her until January 1865, when after the death of Mrs. Cabell, both land and slaves were placed in the possession of the guardian of the children. In the mean time, however, one of the slaves thus designated had died, and the land had from various causes been much injured and greatly diminished in value ; so that the share or portion received by Mrs. Cabell’s representatives was not equal to that received by either of the legatees and devisees of Mrs. Wilson’s estate. It is very clear that thus far gross injustice has been done Mrs. Cabell in the division of the estate. The main controversy between the parties is as to the mode and manner of the redress to be adopted by the court.
There can be no serious question but that the division of the estate made by Mrs. Wilson in 1858; constituted an advancement to each of the children participating in that division. It is equally clear that the value of the *266 advancement must be accounted for at the time it was made. This is the general rule, and there is nothing in the circumstances of this caseto justify a departure from it. The division of the land was first made under a decree of the Circuit court; but objection being made the decree was set aside and the suit dismissed. Mrs. Wilson, however, persisted in her purpose of having a division, which was formally and regularly made, and a deed of release executed by her and accepted by the donees. They were put in possession of their respective portions, and they or their alienees have ever since been in the enjoyment of the rents and profits. They would have been entitled to any benefit resulting from an appreciation of their respective estates, and they must be content to submit to any loss arising from the depreciation. The same rules must apply to the slaves. The division and allotment were regularly made, the legatees were placed in the possession of their respective portions by Mrs. Wilson, and they were ever thereafter regarded as the absolute owners, exercising complete dominion over the slaves, enjoying all the advantages of their increase and their services, under a title unquestioned and unquestionable. This view is fully sustained by the will of the testator. He authorized Mrs. Wilson to give to his children or either of them such portion of his estate as she could conveniently spare. It was not his intention that what was so given by her should ever be returned; unless perhaps, indeed, it might be essential to an equal division of his estate; but that the part received, should be accounted for upon a final division. It is difficult to imagine a stronger case for the application of the rule fixing the liability for the value of the advancement when made.
In regard to the charge of interest upon the advancements, no exception was taken in the court below to the *267 ■report of the commissioner for fhe failure to allow it; •and it may be a question how far it is competent to urge ■the objection/or the first time in this court.
■ However this may be, the general rule is, that the 'legatee or distributee is to be charged with the value of ■the advancement without interest. There is nothing in ■the will of Mr. Wilson or the circumstances of this case ■which requires the application of a different rule.
In the next place, it is very clear that Mrs. Cabell was not advanced along with the other children in 1858. ’ The mere act of designating a tract of land and a lot of slaves as hers, did not constitute an advancement in any ; sense of the word. It gave her no title to or control of the property. It was never placed in her possession, nor did she ever receive the slightest benefit from it. It •nan not be regarded as a present advancement, because there was no possession so as to bestow immediate enjoyment or opportunity of enjoyment; nor could it •operate as a future advancement, because the gift was not executed. If Mrs. Wilson had died without perfecting it by a delivery of the possession, Mrs. Cabell would have had no valid claim to this or any other spe•cific portion of the estate, hut only a right to participate in the undivided residuum. And even if it can be regarded as a future advancement, its value must be ■estimated at the time the gift substantially took effect, which was in January 1865. The real difficulty lies in ■fixing a rule by which such value may be fairly ascertained. As a general rule, the price which property eommands in market is the safest standard of value. Hut clearly that would not to be a just standard in this •case, as applied to the negroes received by the children ■pf Mrs. Cabell in January 1865. The negroes remained in their possession a little over two months; when they were emancipated by the results of the war, and the *268 ev^ence tends strongly to show that during this time they were of but little sérvice to the children. Taking into consideration the time when this advancement was made, and the circumstances attending the transaction, it would be grossly unjust to the infants to charge them with eighteen thousand dollars, the market value of the the negroes, and then, by reducing that to gold, to hold them responsible for the amount thus ascertained.
On the other hand, the Circuit court erred in holding that the negroes had ceased to be slaves in Jan. 1865. They were recognized as slaves dy the Constitution and laws in force at that time in all this region of Virginia. They were received and employed as slaves by the guardian, until the termination of the war, and though of little real value or service to the parties, whatever it was, they m ust be charged with it.
So far as the land is cóncerned, the same observations apply to some extent. For reasons too obvious to mention, it would not be just to the other legatees to estimate the value in Confederate currency and to charge the children with the gold value of such currency. It must be admitted there is always some difficulty in adopting a standard by which to assess the value of real estate during the existence of the war, especially at the period immediately preceding the close of the struggle. The difficulty is, however, more apparent than real; as will be seen by reference to the history of a number of cases decided by this court. Meredith v. Salmon., 21 Gratt. 762; Pharis v. Dice, Ibid. 363; Kraker v. Shields, 20 Gratt. 377.
It is no more difficult to ascertain the value of a tract of land in the present currency in January 1865, than in May, or August, or September of that year. Accordingly, I think the commissioner should have been directed to estimate in the present currency the value of *269 the tract in question at the time it was turned over to the children by Mrs. "Wilson; and for that value they should be held accountable. Without intending to press any decided opinion upon the subject, the weight of the evidence indicates that the Circuit Judge somewhat underrated the value of the land in fixing it at eight dollars per acre. As, however, the report of the commissioner has to be reformed in other respects, the parties will have an opportunity, if they desire it, of adducing additional testimony upon this point.
The only remaining matter for consideration is in respect to the charge against Mrs. Puryear for timber taken by her husband from lands belonging to the estate.
It is very clearly proved that Puryear, with the consent of Mrs. Wilson, appropriated to his own use large quantities of this timber; that it wa3 received by him and his wife as an advancement, and was so regarded by Mr3. Wilson and the Circuit court was entirely correct in so treating it.
Por the errors already adverted to in regard to the valuation of the land and slaves, the decree must be reversed and the case remanded for further proceedings in conformity with the views herein expressed; but in every other respect is affirmed.
The other judges concurred in the opinion of Staples,J.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the negroes delivered to the guardian of the appellees, the children of Martha C. Cabell, dec’.d, in January 1865, were slaves at the time of such delivery, recognized as such by the" Constitution and laws then in operation, and so treated and used by the said guardian until the close of hostili *270 ties. ' The Circuit court, therefore, erred iu holdina- they ° were not the subject of advancement. And although. the said appellees were not liable for the market price-of said slaves, estimated in Confederate currency reduced. to gold, as reported by the commissioner, they are chargeable with the fair value of said slaves, or for their services during the period they were under the control of said gua3-dian. The Circuit court ought to have directed an enquiry by its commissioner, with the view to ascertain the sum or amount properly chargeable against the said appellees upon the basis herein indicated ; the evidence not warranting the opinion of' the said Circuit court that said slaves were practically of no value, but rather an expense to the infant children ~
The court is further of opinion, that the tract of land-received by the guardian of the infant appéllees in Janary 1865, constitutes an advancemént as of that date, to-be accounted for by them at its then existing value. The-Circuit court, however, ei’red in fixing the price to bo paid by the appellees at eight dollars per aci-e; that estimate, acco3-ding to the weight, of the evidence, being-below the i-eal value of the ti-act. In the present aspect of the case, it is not deemed advisable for this court to indicate any opinion as to what precise sum is cha3-geableupon the - appellees in this respect. The whole subject is peculiarly pi’oper for enquh’y by a commissioner óf the-court, upon the testimony ali’eady- in the recoi'd, and such further evidence as -the parties may desire to adduce. The commissioner should be directed to enquireinto and 3-eportthe i-eal value of the tract in question in January 1865, estimated in the present currency of the-country, and with that amount the said appellees should becha3-ged:
The cou3-t is opinion that there is no other error in the-said decree than as aforesaid.
*271 Therefore, it is decreed and ordered, chat so much of the said decree as is above declared to be erroneous, be reversed and annulled, and the residue thereof affirmed; and that the costs of the appellants and appellees in prosecuting and defending this suit respectively, be paid out of the proceeds of the sale of the land decreed to be sold in this case, by the commissioners who may make such sale. And it is ordered that the cause be remaded to the said Circuit court for further proreedings to be had therein to a final decree, in conformity with the foregoing opinion and decree.
"Which is ordered to be certified to the said Circuit court of the town of Danville.
Decree reversed.