## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### WEST V. JONES AND ALS.

January 10, 1889.

1. ADVANCEMENTS.—Where three heirs were advanced in slaves in 1855, 1859 and 1861, respectively, it was *held* proper, in allotting slaves in December, 1864, to equalize an heir who had received none, to allot them as of their value in 1861, the subsequent emancipation causing a loss common to all the heirs.
2. IDEM—*Imperfect Gift.*—Where two daughters were nominally given, but received no title to a tract of land, their father afterwards having sold it for $10,000 and given each of them $5,000, in Confederate currency, they should be charged with the amount of that currency so received by them as advancements.
3. SLAVES.—Slaves were recognized as such in December, 1864, by the Constitution and laws of Virginia.

Appeal from decree of circuit court of Halifax county, rendered September 9th, 1872, in the chancery cause wherein Thomas S. Jones and Mary, his wife, formerly Mary West, were complainants, and Mary A. West, widow and administratrix, and Elizabeth, Martha, and Addison L. West, the heirs and distributees of Beverly E. West, deceased, were defendants, the object being a settlement of the estate, and a division thereof between the parties. The decree being unfavorable to Addison L. West, he obtained an appeal to this court. Opinion states the case.

*J. W. Riley,* for appellant.

*W. W. Henry,* and *J. M. Bouldin,* for the appellees.

LACY, J., delivered the opinion of the court.

This appeal was allowed, without *supersedeas*, on the 4th day of June, 1874, and has repeatedly been called for argument here, and continued because of the sickness and absence of counsel by whom the errors were assigned, and was finally submitted for decision herein on the 12th day of December, 1888, which was the last day on which arguments were heard at the last term, being submitted for decision upon the petition for appeal and the transcript of the record, without other argument, written or oral, upon either side. The case is as follows: In the year 1864, one Beverly E. West, of the county of Halifax, died intestate, possessed of large real and personal estate, including many slaves, leaving a widow and four children. On the 28th day of November, 1864, a suit was instituted in the county court of said county, seeking a division of the estate. On the same day answers were filed consenting to a division, and a decree at once rendered by consent. By said decree commissioners were appointed to make distribution of the personal estate, and to divide the real estate, the decree directing division in kind of both the real and personal estate, and directed the advancements to be accounted for and equalized in the division of the slaves; and in making division of the slaves the commissioners were directed to value them as of the 1st day of January, 1861—that is, before the war then carried on between the States had affected their value, either actually or nominally, and before the money of the country had become inflated or diminished in value. A report of the distribution of the personalty was returned before the December term, 1864, and on the 26th day of December, 1864, was confirmed by decree in the cause. The commissioners reported that the three daughters had been advanced—Mrs. Jones, $5,000 in slaves, Elizabeth, $5,000 in slaves, and Martha, $6,000 in slaves; that the intestate had advanced, in 1863, to Mrs. Jones $5,000, Elizabeth $5,000, and Martha $4,000 in Confederate money; that the son, Addison, the appellant, had been

advanced nothing.   To the said Addison, to equalize the dis-
tributees, they allotted seven slaves of the value of $5,000,
according to the valuation of the year 1861, and directed that
he should be paid $5,000 in Confederate money.   On the 29th
of August, 1865, the said decree of the December term, 1864,
confirming the report of commissioners making distribution of
the personalty, was set aside, and in December, 1866, the cause
was remanded to the circuit court of Halifax county.   In August,
1866, Crockwell and his wife (the said daughter, Martha,) filed
their bill, having the same objects as the original bill, which
was by Jones and wife (the daughter, Mary).   The two causes
were consolidated and heard together.   By decree in the con-
solidated causes, a commissioner was directed to restate the
account of advancements and of the personal estate received by
the appellant after the death of the intestate.   This commis-
sioner charged the three daughters each with advancements in
slaves of the value of $5,000, one in 1855, one in 1859, and one
in 1861 (in March), and the appellant with an allotment of
slaves of the value of $5,000, which, although allotted in 1864,
had been allotted upon a basis of valuation as in 1861.   By the
said report it also appears that the intestate advanced to his
daughter, Elizabeth, in 1855, a tract of land, and to his daughter,
Mary, in 1859, a tract of land, the dates respectively of their
marriage, which two tracts were valued at $5,000.   No title,
however, was conveyed by the father to his said daughters, and
in 1863 he sold these two tracts for $10,000, and gave to each
$5,000 in Confederate money; and these were charged to the
said daughters as Confederate money advanced as of that date.
The real estate was also divided and reported, exceptions taken
sustained, and the report recommitted, and subsequently reported
as first made, and no exceptions taken.   On the 9th day of Sep-
tember, 1872, the decree complained of was rendered, overruling
all exceptions and confirming the said report.   Whereupon the
appellant, the son, Addison, applied for and obtained an appeal
to this court.   The first assignment of error is that the negroes

allotted to the appellant were valued as of their value in gold or a solvent sound currency.

The appellant was entitled to be made equal with his sisters. They had received $5,000 worth of slaves by advancement, upon a gold valuation, and if he had received $5,000 worth of slaves in Confederate currency in 1864, the greatest injustice would have been done him, and it was for the protection of his interest that the basis was adopted which would give an equal value in slaves. This was in December, 1864, and he was absent in the army; but his mother, his recognized agent, acted as such, and received the slaves for him, and he came home in January following and received them, and made no complaint, as, obviously, he had no just cause for any objection, having been dealt with in the utmost fairness; but the war ended soon after, and by its results, his slaves being freed, he says they have no value. This is true of his slaves, but it is equally true of those given to his sisters. But, when he received the allotment, it was not true either of his or theirs, each, as the record shows, having received the same value in slaves, and the results of the war affected one precisely as they did the other—freed their slaves—and any measure to redress one loss must operate to redress the other as well, and thus each would stand related to the other as before; and there was no error in this action of the circuit court.

The second assignment of error is that the slaves, at the time of the allotment, had no value, being free. In the case of *Puryear* v. *Cabell*, 24 Gratt. 268, this court, speaking of an allotment of slaves in January, 1865, says: "The circuit court erred in holding that the negroes had ceased to be slaves in January, 1865. They were recognized as slaves by the constitution and laws in force at that time in all this region of Virginia. They were received and employed as slaves by the guardian until the termination of the war, and, though of little real value or service to the parties, whatever it was, they must be charged with it." In this case the question as to the actual value cannot

enter, the allotment having been made upon a gold basis as to all parties.

The next assignment of error is, that Elizabeth and Mary should have been charged with an advancement of lands upon a gold basis, one in 1855 and the other in 1859. But it must be remembered that, while these lands were nominally given to them, they were never actually conveyed to them, and were in fact conveyed to other parties, and $5,000 in Confederate money given to them, and they, in fact, had no other advancement. In *Puryear* v. *Cabell, supra,* this court said: " It is very clear that Mrs. Cabell was not advanced along with the other children in 1858. The mere act of designating a tract of land and a lot of slaves as hers did not constitute an advancement in any sense of the word. It gave her no title to or control of the property." It was clearly right to charge them such advancement as they received, and that was $5,000 each in Confederate money, and there was no error in this ruling of the circuit court.

The only remaining assignment of error is, that exceptions were sustained to the report of the division of the real estate, but these exceptions were subsequently disregarded, and no injury has resulted to the appellant, nor to any person therefrom. We are of opinion, upon the whole case, to affirm the decree of the circuit court appealed from.

DECREE AFFIRMED.