# Richmond.

## HEADRICK V. McDOWELL AND OTHERS.

### DECEMBER 3, 1903.

### Absent, Buchanan, J.*

1. DESCENTS AND DISTRIBUTIONS—*Advancements—Release of Expectancy.*—Upon the death of a parent intestate, the descent is cast by operation of law upon his heirs, and his personalty passes in accordance with the statute of distributions. Where advancements have been made in the lifetime of the parent they must be brought into hotchpot by him who receives it, and thus perfect equality is attained. This rule is unaffected by the fact that some of the heirs, at the time of receiving their advancements, enter into covenants with the parent, whereby they relinquish all interest in or claim to any portion of the estate then owned or which may be thereafter acquired by the parent, and as to which he may die intestate.

Appeal from a decree of the Circuit Court of Pittsylvania county, pronounced in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*James L. Tredway* and *Samuel A. Anderson,* for the appellant.

*Judge Buchanan was detained at home by sickness.

*P. H. & H. Dillard,* for the appellees.

KEITH, P., delivered the opinion of the court.

Jacob Headrick, wishing to make an advancement to his son, John C. Headrick, of the whole of that portion of his estate, both real and personal, which he supposed his son would otherwise receive upon the father's death, on the 31st of August, 1883, paid to his son, John C. Headrick, the sum of $850, and in consideration thereof John C. Headrick forever relinquished all interest in and claim to any portion of the estate which Jacob Headrick then owned or might thereafter acquire, and as to which he might die intestate.  This advancement on the part of the father and relinquishment on the part of the son is evidenced by writing under seal, filed with the record.  On the 20th day of June, 1885, the father made advancement of certain real and personal property to his daughter, Mary Jane McDowell, in consideration of which she relinquished her interest in and claim to any portion of the estate then owned by her father, or which he might thereafter acquire, and as to which he might die intestate, which contract is also evidenced by a paper under seal, duly signed by father and daughter.

Jacob Headrick had a third child, William C., the issue of a second marriage, and to him, during his lifetime, he also made advances equal in value to those made to his two children above set out, but he did not exact from William any relinquishment of interest in the residue of his estate.

After these advances had been made, Jacob Headrick accumulated property valued at about $2,000, and died intestate. Thereupon William C. Headrick filed his bill, setting out the facts with respect to the advancements to his half-brother and half-sister, and concludes with the prayer that the property, real and personal, of which his father died seised and possessed, might be decreed to him, and that Mary J. McDowell and

John C. Headrick be excluded from any participation in the father's estate by virtue of their deeds of relinquishment.

The Circuit Court was of opinion that all the estate of which Jacob Headrick died seised and possessed "descends by operation of law to Mary J. McDowell, John C. Headrick, and William C. Headrick, who are the children and heirs at law of said decedent, and are entitled to an equal participation in all of the personal and real estate of said Jacob B. Headrick, subject to the dower rights of L. F. Headrick, the widow of the said Jacob B. Headrick, he having died intestate," and to this decree an appeal was allowed by one of the judges of this court.

We are of opinion that there is no error in this decree.

The petition for appeal cites adjudications from courts of the highest respectability, which tend strongly to maintain petitioner's contention. In *Curtis v. Curtis*, 63 Am. Dec. 651, it was held that a "release by heir apparent of his estate in expectancy, with a covenant of nonclaim, made fairly, and with the consent of his ancestor, precludes the releasor from afterwards setting up a claim to any part of his ancestor's estate, either as heir or as devisee." And in *Russ v. Alpaugh*, 118 Mass. 369, 19 Am. Rep. 464, the court, citing *Curtis v. Curtis*, with approval, says, "A release with covenants of warranty by an heir apparent of his estate in expectancy will bar his claim by descent on the death of his ancestor." And in *Trull v. Eastman*, 37 Am. Dec. 126, the court says, "Where an heir apparent conveys his estate in expectancy, and covenants in the deed that neither he nor those claiming under him will ever claim any right in such estate, this covenant, which amounts to a warranty, will bar him and those claiming under him when the right accrues."

To the same effect is *Kenney v. Tucker*, 8 Mass. 143, and *Nicholson v. Caress*. 59 Ind. 39; *Kershaw v. Kershaw*, 102 Ill.

307, and *Simpson* v. *Simpson,* 114 Ill. 603, 4 N. E. 137, 7 N. E. 287.

There is authority, also, upon the other side of the question. In *Cannon* v. *Nowell,* 51 N. C. 437—a case which involves the question here under consideration—Judge Ruffin uses the following language: "Heirs take by positive law when the ancestor dies intestate, and the course of descents cannot be altered by words excluding particular heirs or by any agreement of parties. Suppose the father to have had no other child at his death but the plaintiff. Being the sole heir, he must have taken the whole of the descended land *ex necessitate.* There must, therefore, be a disposition to another, so as to break the descent, otherwise the land descends according to law; that is, in this case, to the heirs in general, subject to the provision for bringing advancements into hotchpot." See, also, *Coffman* v. *Coffman,* 85 Va. 459, 8 S. E. 672, 2 L. R. A. 848, 17 Am. St. Rep. 69; *Denson and Wife* v. *Autrey's Ex'rs,* 21 Ala. 205.

We have no decision upon the subject in Virginia, and, notwithstanding the formidable array of authorities, we are disinclined to ingraft the principle which they maintain into our jurisprudence. Upon the death of the ancestor the descent is cast by operation of law upon the heirs, and the personalty passes in accordance with the statute of distribution. Where advancement has been made in the lifetime of the parent, it must be brought into hotchpot by him who receives it, with the result that perfect equality is attained with respect to estates of intestate decedents.

The question put by Judge Ruffin in *Cannon* v. *Nowell, supra,* would be equally pertinent in the case before us: Where would the estate of Jacob Headrick have gone if W. C. Headrick had died without issue in the lifetime of his father? Our laws for the descent and distribution of the estates of intestate decedents are simple, and produce perfect equality, while our statute upon the subject wisely regulates, without unduly restraining, the

power of testamentary disposition, and we do not feel that the introduction of the principle for which appellant contends would promote the administration of justice, or be a desirable addition to our jurisprudence.

The decree of the Circuit Court is affirmed.

*Affirmed.*