# Staunton.

## McCoy v. McCoy.

September 20, 1906.

Absent, Keith, P.

1. DESCENTS AND DISTRIBUTIONS—*Advancements—Hotchpot—Covenants Releasing the Estate.*—Upon the principle that equality is equity, advancements in the lifetime of a parent must be brought into hotchpot by those who receive them, in order that there may be perfect equality among those to share in the estate of the parent; and this rule is unaffected by the fact that some of the heirs, at the time of receiving their advancements, entered into covenants with the parent, whereby they relinquished all interest in or claim to any portion of the estate then owned or which might be thereafter acquired by the parent, and as to which he might die intestate.

2. DESCENTS AND DISTRIBUTIONS—*Bringing Advancements into Hotchpot— Election—Interest on Advancement—Perfecting Title to Advancement.*—A child who has received advancements from his father during the latter's lifetime, may elect either to bring the property so advanced into hotchpot in a suit to distribute the father's estate and receive his share of the property to be distributed, or to take the property advanced as his full share without participating in the distribution. If he elects to bring the advancement into hotchpot, he is entitled to share in the property to be divided, being charged as against his interest therein with the value of the property advanced as of the time of the advancement, but without interest; if he elects not to bring the advancement into the hotchpot, he will be debarred from participation in the distribution, but his title to the property advanced, if incomplete, will be perfected under a decree of the court.

3. DESCENTS AND DISTRIBUTIONS—*Election Not to Bring Realty Advanced Into Hotchpot—Share of Personalty.*—The election by a child not to bring an advancement of real property into hotchpot does not

debar him from participating in the division of his father's personal estate where such advancement does not exceed his share of the real estate.

4. DESCENT AND DISTRIBUTIONS—*Incomplete Advancement—Participation in Distribution.*—Where a father intends to give certain land to a child as an advancement, but neither gives the child a deed to the land nor puts him in possession, and afterwards sells the land and gives the child the proceeds, the advancement is incomplete and the child is entitled, on the distribution of the father's estate, to a share of both the real and the personal estate, being charged in the division of the real estate with the amount of the proceeds of the land.

5. DESCENTS AND DISTRIBUTIONS—*Hotchpot—Repayment of Advancements.*—While a child receiving an advancement from a parent may bring such advancement into hotchpot and share in the division or distribution of the estate of the parent after his death, he cannot be required to pay back to the estate any part of the advancement, and if it turns out that he has received, by way of advancement, an equal share with the others of the estate, or more than his share, he can only be excluded from participation in the division or distribution of the estate.

6. PARTITION AND DISTRIBUTION—*Reference to Commissioner—Costs.*—Where in a suit for the partition and distribution of a decedent's estate a reference to a commissioner to make the usual and necessary inquiries in the cause is directed, the cost of such reference should be paid out of the decedent's estate.

Appeal from a decree of the Circuit Court of Wise county confirming a commissioner's report in a suit for the partition and distribution of a decedent's estate. Complainants appeal.

*Reversed in part.*

The opinion states the case.

*E. M. Fulton,* for appellants.

*O. M. Vicars* and *Bond & Bruce,* for appellees.

CARDWELL, J., delivered the opinion of the court.

W. W. McCoy, in 1876 and prior thereto, was the owner or claimant of a boundary of land, situated in Wise county, Virginia, containing 720 acres or more, which at that time was of little value, and he seemed about that time to conceive the idea that he would make to some of his nine children advancements of a portion of the land, estimating that he would have for each about 80 acres.

In that year he gave, by way of advancement, to his son, R. C. C. McCoy, spoken of in this record as Chris. McCoy, about 80 acres of said land, then of the value of fifty cents per acre; but he made him no deed of conveyance, although he put him in possession of the land, and the son went upon it, cleared, improved and used it as his own for some years, when W. W. McCoy sold the land for $1,200 and paid over to his son $1,020 of the purchase money.

In 1880, W. W. McCoy set apart to one of his daughters, Lydia Lawson, about 88 acres of his land, then of the value of fifty cents to one dollar per acre, and she and her husband entered upon and took possession thereof, made permanent and valuable improvements thereon and have since been living upon the land, claiming the same as their own.

In 1887, W. W. McCoy and wife executed a deed for this parcel of land to his daughter, Lydia Lawson, but that deed contained a provision that it was not to go into effect until W. W. McCoy died; and in 1899 W. W. McCoy and wife, by deed in which Lydia Lawson and her husband united, conveyed the coal underlying certain of his lands and that which he had given to his daughter, Lydia Lawson, to the Virginia Iron, Coal and Coke Company for $1,549.29, of which sum W. W. McCoy turned over $440 to his daughter, Lydia, as representing the purchase money for the coal underlying her land.

In 1881, W. W. McCoy gave to another of his daughters,

Rhoda Rigsby, or intended to give to her, 80 acres, but he after-wards sold and conveyed this 80 acres to one William Hays for $100, and gave the claim for the purchase money to his daughter, Rhoda Rigsby.

In 1896, he gave to another daughter, Laney McCoy, 80 acres, which was at the time of the value of about $10 per acre, and she has been in possession thereof ever since, but has never received any deed of conveyance of the land to her.

W. W. McCoy died intestate on the 11th day of April, 1900, possessed of about 352 acres of land, worth at the time of his death about $10 per acre, and a personal estate of the value of about $1,900, to be divided among his children, subject to the dower rights of his widow, Elizabeth McCoy, who also survived him; and in December, 1900, five of his nine children, to-wit: M. L. McCoy, Caroline Bise, Mary E. Hays, Litha L. Bise and Laney McCoy, filed their bill of complaint in the Circuit Court of Wise county against A. M. Vicars, administrator of W. W. McCoy, deceased, Elizabeth McCoy, widow of W. W. McCoy, and his other children, heirs at law and distributees, to-wit: Chris. McCoy, Malissa McCoy, Lydia Lawson and Rhoda Rigsby, for the purpose of having the said 352 acres of land partitioned and the personal estate aforesaid divided amongst themselves to the exclusion of the other children of W. W. McCoy, namely: Chris. McCoy, Lydia Lawson and Rhoda Rigsby, and also to require Lydia Lawson to pay to the administrator the sum of $440 which she received for the coal on the 88 acres of land which her father had given her, as above stated, and to have the $440 also divided amongst the plaintiffs.

To this bill Lydia Lawson and husband, Rhoda Rigsby and husband, Chris. McCoy and A. M. Vicars, administrator, filed their answers. Lydia Lawson and Rhoda Rigsby in their respective answers admit the advancements to them, respectively,

but deny the right of complainants to have the whole of the estate left by W. W. McCoy divided among themselves to the exclusion of the respondents, and among other things state the character and value of the advancements made to them, respectively, and the time the same were made; and Lydia Lawson alleges fully the facts relative to the $440 with which she is sought to be charged by complainants, and claims the money as her own. Each of the answers, other than that of the administrator, deny the allegation of complainants' bill that the advancements to Lydia Lawson, Rhoda Rigsby and Chris. McCoy were received upon the agreement on their part with their father that the advancements to them, respectively, should be in full of their interests in any estate of which he might die seised and possessed.

On the 12th of September, 1901, the cause was by decree entered therein referred to a commissioner of the court, who was directed, among other things, to ascertain and report upon the following matters:

1. "What are the facts in reference to the alleged sum of $447, or any part thereof, in the possession of Lydia Lawson.

2. "Whether the 88 acres, which was given by W. W. McCoy to said Lydia Lawson, was given to her as an advancement in full of her prospective interest in said W. W. McCoy's estate, real or personal, or both, or only as a partial advancement thereon, and if only a partial advancement, the value thereof at the time, and also the relative value thereof when compared with the other real estate of said W. W. McCoy at said time, and its value at the present time.

3. "Whether the said W. W. McCoy made any advancements to defendant, Rhoda Rigsby, and whether the same or the $90 admitted by Rhoda Rigsby to have been received by her was in full of the prospective interest of the said Rhoda Rigsby in

either said real or personal estate, or both, or, only a partial advancement, and the value thereof at the time, and also the relative value thereof, as compared with the other lands of the said W. W. McCoy.

6. "Any other matter put in issue by the pleadings which any party may desire to have the commissioner pass upon, or deemed pertinent by said commissioner."

After the cause had been referred to the commissioner, Rhoda Rigsby sold her interest as an heir at law and distributee of the estate of her father, W. W. McCoy, to one R. M. Vicars, and upon his petition the said R. M. Vicars was admitted as a party defendant to the cause.

The commissioner executing the decree, after having heard all the evidence offered in the cause, reported, among other things, as follows:

"First. He finds that there is in the possession of the said Lydia Lawson $440, which was the purchase price for the coal sold off of the 88 acres which was given to her by W. W. McCoy in his lifetime, and about the year 1880, and which said coal was sold at the price of $5 per acre; that this $440 was retained by the said Lydia Lawson out of the proceeds derived from the cashing of a check in the name of W. W. McCoy for $1,540, which check embraced the amount due for the sale of the coal on the 88 acres of Lydia Lawson. Your commissioner finds that Lydia Lawson was justly entitled to retain the said $440, and that the estate of the said W. W. McCoy has no claim against her whatever on that account.

"Second. Your commissioner finds that the 88 acres was given to Lydia Lawson by her father, W. W. McCoy, in the year 1880, as an advancement, and at the time this advancement was made, it was supposed to have been an heir's part of his real estate, but there has been produced before your commissioner no

evidence which would justify him in coming to the conclusion that it was intended as an advancement in full of her prospective interest in the said estate of the said W. W. McCoy, whether real or personal, or both, and that according to the decision ·of the Court of Appeals in the case of *Headrick* v. *McDowell and others,* reported in 102 Va. 124, 45 S. E. 804, 65 L. R. A. 578, 102 Am. St. Rep. 843, it could not be legally construed as an advancement in full of her interest in the estate of the said W. W. McCoy, although that may have been the intention at the time it was given.

"Your commissioner finds that the value of the said land at the time the gift was made was $1 per acre, and at the time this land was equal in value to the acreage of the rest of the land of the said W. W. McCoy, and that its present value is about $10 per acre.

"Your commissioner finds that this gift was made in 1880 and that in pursuance thereof the said Lydia Lawson and her husband went upon the land, cleared and fenced it, planted out an orchard, improved it and put buildings thereon, and that the said Lydia Lawson has the right to call for a deed if she has not already received one.

"Third. As to the third inquiry in regard to the advancement to Rhoda Rigsby, your commissioner finds that the said Rhoda Rigsby received a debt on William Hays for $100 about the year 1881, and that this was intended as a partial advancement by the said W. W. McCoy to the said Rhoda Rigsby. Your commissioner further finds that the said Rhoda Rigsby has never received any land from the said W. W. McCoy.

"Sixth. Your commissioner deems it pertinent to state that in accordance with his finding above that the said Lydia Lawson should be charged with $88 as of the first day of January, 1880. R. C. C. McCoy should be charged with $40 as of the first day

of January, 1876.    That Rhoda Rigsby should be charged
with $100 as of the first day of January, 1884.    That Laney
McCoy should be charged with $800 as of the first day of Janu-
ary, 1896."

To this report the complainants filed seven exceptions, all of
which as to the part of the report above set out were overruled,
and the report of the commissioner confirmed by the court; and
from that decree this appeal was taken.

In considering the case it should be borne in mind that the
several advancements made, or intended to be made, by W. W.
McCoy to his four children, Chris. McCoy, Lydia Lawson,
Rhoda Rigsby and Laney McCoy, were at the most but incom-
plete advancements.    The lands were never conveyed to these
respective parties, except that of Lydia Lawson, in which deed
it was expressly stated that it was not to take effect until the
death of W. W. McCoy; and the lands intended for Rhoda
Rigsby, which in fact she never had possession of, were con-
veyed by W. W. McCoy to another party; and the lands set
apart for Chris. McCoy, taken possession of by him and valuable
improvements put thereon, were, as we have seen, also con-
veyed away by W. W. McCoy.

Considering first the case of Chris McCoy:    The evidence
is clear, we think, that the 80 acres of land set apart to him in
1876 was not then worth more than fifty cents per acre.    Upon
this land, as we have seen, he made valuable improvements,
and it was subsequently sold and conveyed by W. W. McCoy for
$1,200.    The conditions were such at the time of this sale that
Chris. McCoy was entitled to demand of and receive from his
father a conveyance of the land.    He, however, assented to the
sale by his father, agreeing to take in lieu of the land the pur-
chase money therefor and actually received $1,020.    In his
answer filed in this cause, he demands the residue of the $1,200,

and agrees that if he receives that amount it shall be considered as in full of his share or interest in the lands of which his father died seised and possessed. The decree appealed from gave him the right of recovery of $180 from the personal representative of W. W. McCoy, making no provision, however, against his participation in the real estate now to be divided among the heirs of W. W. McCoy.

We are of opinion that in as much as Chris. McCoy elects to take the $1,200 as his full share of the real estate owned by his father at his death, the decree should have, upon his receiving the said balance of $180, debarred him from participating in the division of the land now to be made in this cause; but he should not be debarred from participating in the division of the personal assets now in the hands of the administrator of W. W. McCoy for distribution.

Upon the principle that equality is equity, advancements made in the lifetime of a parent must be brought into hotchpot by those who receive them, in order that there may be perfect equality among those to share in the estate of the parent; and this rule is unaffected by the fact that some of the heirs, at the time of receiving their advancements, entered into covenants with the parent whereby they relinquished all interest in or claim to any portion of the estate then owned, or which might be thereafter acquired, by the parent, and as to which he might die intestate. *Headrick* v. *McDowell,* 102 Va. 124, 45 S. E. 804, 65 L. R. A. 578, 102 Am. St. Rep. 843.

It is not by reason of any covenant with his father whereby he relinquished all interest in or claim to any portion of the real estate of which his father might die seised and possessed that Chris. McCoy should be debarred of participation in the division of the real estate in this cause, but because of his expressed willingness to accept the proceeds of the sale of the 80

acres, set apart to him in 1876, in full of his interest in the real estate owned by his father at the time of his death; and clearly, we think, to dispose of, in this way, Chris. McCoy as a participant in the division of said real estate can work no injury or injustice to the other heirs interested, for if he should be required to bring into hotchpot the 80 acres of land intended for him as an advancement, he could only be charged with the unimproved value thereof.

With respect to the 88 acres of land received by Lydia Lawson in 1880, upon which she soon thereafter made valuable permanent improvements and retained the same in her possession up to the present time, her father making no claim to the land prior to his death, the said land being approximately one-ninth of the lands then and thereafter owned by W. W. McCoy, the court is of opinion that Lydia Lawson should be allowed to retain the said land, if she so elects, as her full share of the real estate of her father; and in the event that she elects to retain the said land upon these terms she should be allowed also to retain the $440 turned over to her by W. W. McCoy for the coal sold by him from the said land. But if she does not so elect, she should be required to bring the said land into hotchpot and also the $440, and be allowed to participate in the division of the real estate of which W. W. McCoy died seised and possessed, the said land to be charged to her at $1 per acre, its value at the time it was turned to her, and the $440 as of the date she received it, and have credit for such permanent improvements as she may have put upon said 88 acres of land, the difference, if any, between the $440 plus the value of the 88 acres at $1 per acre and the aggregate value of the improvements that she may have put upon the land to be the amount with which she is to be charged as an advancement upon her interest in the real estate to be divided in this cause. She

should also be allowed to participate in the distribution of the personal estate left by W. W. McCoy at his death, from whatever source derived. It it be, as is contended, that the personal estate, which is in money in the hands of the administrator, was realized from the sale of coal and timber upon the lands to be now divided, it does not alter the case. W. W. McCoy had the right to do as he pleased with his own property, and if he chose to sell the coal and timber from his lands, converting the same into money, it is a matter that cannot affect any right that the heirs or distributees of his estate have.

With respect to so much of the commissioner's report, confirmed by the decree appealed from, as holds that Rhoda Rigsby never received any land from her father, W. W. McCoy, but did receive the proceeds from 80 acres which he sold to William Hays, the court is of opinion that there is no error. There is some evidence that W. W. McCoy did intend that his daughter, Rhoda Rigsby, should have 80 acres of land as an advancement upon her prospective interest in his lands, but he made her no deed for it nor parted with its possession, and sold it to another party, turning the claim for the purchase money over to her, amounting to $100. Therefore, the contention that she should be charged with the 80 acres of land as an advancement to her in full of any interest or claim that she might thereafter have in the residue of W. W. McCoy's lands, cannot be sustained, and she should only be charged with this $100 in the division of the real estate of W. W. McCoy now to be divided.

In the case of *West* v. *Jones*, 85 Va. 616, two daughters were nominally given, but received no title to, a tract of land. The father afterwards having sold it for $10,000, gave them each $5,000 in currency, and it was held that they should be

charged with the amount of that currency so received by them as advancements.

That case clearly controls this case as to the right of Rhoda Rigsby to participate in the division of W. W. McCoy's real estate, and leaves her also to share in the distribution of his personal estate, it not being claimed that she has received any part of the personal estate of her father in the way of advancement; and the case cited further illustrates the difference between the rule governing a completed advancement and the rule when it was incomplete.

This brings us to the consideration of the right of Laney McCoy, another one of the children, to participate in the real estate to be divided in this cause, the court below having affirmed the findings of the commissioner that she should be charged with the 80 acres of land she received from her father in 1896 at a valuation of $800 as of the first day of January, 1896.

Laney McCoy received the land as of the date named and has been in possession and control thereof ever since, and the proof sustains, we think, the finding that its value was, as found by the commissioner, $800. It further appears that the 80 acres of land was approximately her aliquot portion of her father's real estate, and if she should elect not to bring the same into hotchpot she should receive a conveyance of the legal title thereto under a decree of the court in this cause as her full share of the real estate owned by her father at the time of his death; but should she elect to bring the land into hotchpot in order to share in the land to be divided in this cause, she should be charged as against her interest therein with the value of the land advanced to her, viz: $800, as of January 1, 1896, without interest, the general rule being, as is well settled, that advancements do not bear interest.

The commissioner also reported "that Mary E. Hays should be charged with $80 as of the first day of January, 1884"; but as there was no foundation in the record for this finding an exception thereto was rightly sustained.

The decree appealed from authorizes A. M. Vicars, administrator of W. W. McCoy, to collect from Rhoda Rigsby, Chris. McCoy, Lydia Lawson and Laney McCoy the amount of the advancements received by them, respectively, from their father, to be distributed, together with all other assets in the administrator's hands, or which might come into his hands, to those entitled thereto, respectively. This was error. While a child receiving an advancement from a parent may bring such advancement into hotchpot and share in the division or distribution of the estate of the parent after his death, he cannot be required to pay back to the estate any part of the advancement, and if it turns out that he has received, by way of an advancement, an equal share with the others of the estate, or more than his share, he can only be excluded from participation in the division or distribution of the estate.

We are aware that the foregoing rulings of this court may not produce perfect equality in the division and distribution of the estate of W. W. McCoy among his nine children, but are of opinion that such a result will thereby be as nearly attained as is possible under the facts and circumstances disclosed in the record.

The decree of the lower court requires the complainants, appellants here, to pay the costs of the execution of the decree of reference above referred to, and this ruling is assigned as error.

We are of opinion that the ruling is erroneous. This is a suit for the partition of the real estate of W. W. McCoy, deceased, and a distribution of his personal estate among his heirs at law and distributees, and the reference of the cause to

a commissioner to make the inquiries directed was but ancillary to the other proceedings in the cause. The inquiries directed were the usual and necessary inquiries in such a case, and it is the universal practice in the courts of this State to pay the costs of the entire proceedings out of the assets of the decedent's estate. Nothing appears in the record to take the case out of the general rule as to costs governing in such cases.

It follows that the decree appealed from, in so far as it conflicts with this opinion, must be reversed and annulled, and the cause remanded to be further proceeded with in accordance with the views herein expressed.

*Reversed in part.*