## Wytheville.

### L. W. INGRAM, JR., V. GEO. S. INGRAM, ET ALS.

#### June 26, 1921.

1. ADVANCEMENTS—*Value of Advancements as of Time when Made—Parol Gift Followed by Deed.*—Property advanced should be valued as of the date at which the advancement was made, but when the parties to whom the advancements were made entered into possession of the lands advanced under parol gifts and subsequently deeds were executed, the valuation of the advancements is to be made as of the time of the parol gifts and not as of the date of the deeds. If at the date of the parol gifts lands were of approximately equal value per acre, their increased or unequal value at the dates of the deeds is immaterial.

2. ADVANCEMENTS—*Valuation—Agreement as to Value at Time of Advancements.*—An agreement between a father and his children, at the time advancements are made to the children, as to the value of the property advanced, irrevocably fixes the value of the advancements.

3. APPEAL AND ERROR—*Weight Attached to Commissioner's Report.*—The report of a commissioner, when the evidence has been taken in his presence, is entitled to great weight, and should not be disturbed unless its conclusions are clearly unsupported by the evidence, and such a report on the value of property, based upon conflicting testimony, and sustained by the trial court, will not be overruled on appeal.

Appeal from a decree of the Circuit Court of Pittsylvania county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Geo. T. Rison,* for the appellant.

*Harris & Harvey,* for the appellee.

42

PRENTIS, J., delivered the opinion of the court.

The appellant, L. W. Ingram, Jr., and the appellees, his two brothers, George S. Ingram and H. D. Ingram, and his sister, Sallie B. Woodall, are the four children and heirs at law of their father, L. W. Ingram, Sr., who died intestate January 5, 1919.

The father owned a large tract of land of approximately 800 acres. On November 2, 1893, he conveyed to his eldest son, Geo. S. Ingram, 38 acres of his land for the consideration of $412.15, which was paid, and on January 27, 1917, he also conveyed to him 64.7 acres for the expressed consideration of $400, which was never paid. January 16, 1913, he conveyed to the appellant, L. W. Ingram, Jr., 110 acres of land for $880, or eight dollars an acre, for which the consideration was paid. December 9, 1916, he conveyed to another son, H. D. Ingram, 100 acres for the expressed consideration of $800, and to his daughter, Sallie B. Woodall, 91 acres for the expressed consideration of $800, neither of which amounts were paid. It is observed that approximately 100 acres of land were thus conveyed to each of his children at the price of eight dollars per acre. Each of these tracts were severed from the original tract of 800 acres, all of which was of the same general character and the same relative value per acre. The bill of appellant recited these several conveyances, asked that dower be assigned to his mother, alleged that the residue of the tract was not capable of judicious and convenient division in kind, prayed for a sale and division of the proceeds, alleging that the conveyances to his brothers and sister were intended by his father as advancements, and that, therefore, he was entitled to a larger share or proportion of the proceeds of the unsold land than they were, and that they

should be charged with the value of the land conveyed to them, alleging that they either paid nothing or a grossly inadequate price therefor. The defendants answered, admitting the facts alleged as to their not having paid the several considerations named in the deeds, claiming that at the time of the conveyances it was the intention of their father to require them to execute notes or bonds therefor. They also averred that their father was of opinion that the lands conveyed to each of his children were substantially of the same value, and that by requiring them to pay the considerations named he would bring about substantial equality in the division of his estate, but that he afterwards determined not to require such payments; that instead he would repay to the appellant the amount which had been actually paid for the land conveyed to him, that he would also repay to Geo. S. Ingram the $412.15 which had been paid by him, and that thus equality would be accomplished among his children in the property thus received by them by way of advancement; that thereafter, in execution of this plan, he executed a writing declaring this purpose and that he did refund to· the appellant the amount of the purchase money which he had paid for the land conveyed to him.

The·case was referred to a commissioner to ascertain and report what advancements had been made by the father to his children, and directed to return the evidence with his report. Depositions were taken, which were returned, and they show a hopeless conflict of testimony between the parties in interest as well as between the witnesses introduced to support their respective claims. The commissioner reported that the evidence showed that the lands conveyed were of the same general character, and of substantially the same value at the time the respective parties took possession thereof, and that to effectuate the equalization of shares of his children in his land intended by the father, the appel-

lees should be charged with the unpaid purchase price of the lands received by them at the prices agreed upon with their father. He also reported that the evidence was insufficient to show that his father had fully repaid to the appellant the amount which had been paid for the land conveyed to him, though his father had paid him $200. So that H. D. Ingram and Mrs. Woodall were charged with advancements of $800 each, and Geo. S. Ingram $400 for the agreed price of the lands theretofore conveyed to them, respectively, for which they had not paid, and the appellant, L. W. Ingram, Jr., with $200 cash, which had been advanced to him by his father.

This report was excepted to by the appellant, upon the ground that at the dates of these several deeds to his brothers and sister, and after the conveyance to him, the lands had greatly advanced in value, and that they should, therefore, be charged with sums greatly in excess of the amounts named in the several deeds as the consideration therefor, and in support of his contention relies on the accepted rule that property advanced should be valued as of the date at which the advancement was made. *McCoy* v. *McCoy*, 105 Va. 829, 54 S. E. 995; 1 R. C. L. 678.

That this is the rule there can be no doubt; so far as we know it is everywhere accepted. As applicable in this controversy, it is thus well expressed in the case of *Moore* v. *Burrow*, 89 Tenn. 104, 17 S. W. 1035: "Confessedly, the parol gift communicated no title, and was revocable at any time. Nevertheless, the moment the deed was executed, the title passed and the advancement became complete and irrevocable, going back by relation to the date of the parol gift, when the possession of the land and the enjoyment of its rents and profits began. The deed was in law, but an affirmation and ratification of the parol gift, without change in the control and dominion of the land. Therefore, the advancement is to be treated as made, and accordingly valued at the time of the parol gift in 1856."

Here there is evidence that these grantees, the appellees, had entered into possession and enjoyment of these several tracts of land several years before the deeds were executed, with the understanding that they would thereafter be conveyed, so that the expressions of the court in the case last cited are peculiarly appropriate. The exceptions were properly overruled, because at the date of these parol gifts the lands were of approximately equal value per acre, and their increased or unequal value at the dates of the deeds is immaterial.

There is still another consideration which distinguishes this case from any other to which our attention has been directed. In the case of *McCoy* v. *McCoy, supra,* and other cases of which it is typical, there was merely the parol gift of land and other property, without any cotemporaneous ascertainment of its value, which, when the estate was brought into hotchpot, it was therefore necessary to appraise. In this case, however, the father and his children agreed at that time upon the value of the property to be advanced, and this irrevocably establishes its value as an advancement. It is not a case where for a nominal consideration an ancestor conveys property by way of advancement to his descendant, for in this case the considerations named were substantially equal as between the several children, and there is testimony showing that at the time the father determined to make these dispositions of his property and placed the donees in possession, the lands conveyed did not exceed in value the considerations which were expressed in the subsequent conveyances.

The Virginia cases on the general subject of advancements are cited in the recent cases of *Payne* v. *Payne,* 128 Va. 33, 104 S. E. 712, and *Poff* v. *Poff,* 128 Va. 62, 104 S. E. 719.

It is unnecessary, in this case, to discuss the conflicts in the testimony. It is sufficient to say that we agree with the

conclusions of the commissioner and of the trial court, and that, even if we had any fair doubt as to their correctness we would affirm the decree, and follow the familiar rule, so often emphasized, that the report of a commissioner, when the evidence has been taken in his presence, is entitled to great weight, and should not be disturbed unless its conclusions are clearly unsupported by the evidence, and such a report on the value of property, based upon conflicting testimony, and sustained by the trial court, will not be overruled on appeal. *Cottrell* v. *Mathews,* 120 Va. 847, 92 S. E. 808; *Va. Lumber & Extract Co.* v. *O. D. McHenry Lumber Co.,* 122 Va. 111, 94 S. E. 173.

*Affirmed.*