# Staunton

## Tona Ratliff and G. Mark French, Assignee, Etc. v. Marsh Meade, et als.

September 5, 1945.

Record No. 2959.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Vernoy B. Tate,* for the appellants.

*E. J. Sutherland, A. M. Phipps* and *S. H. & Geo. C. Sutherland,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

David Meade died intestate in the year 1928, leaving surviving his widow, Nancy Meade, and six adult children as follows: Marsh Meade, Alfred Meade, Polly Baker, Lucy Short, Cassie Meade and Will N. Meade. At the time of his death, David Meade owned about 150 acres of land in Dickenson county, Virginia, under which had been con-

veyed the coal and mineral rights, except in 15 acres surrounding his home place, a small number of sheep and about $400 in cash in a bank. Will N. Meade died intestate in 1932, leaving as his heirs at law Mary Meade, his widow, and three children, Tona Meade Ratliff, Stella Buchanan and Delphia Mae Bise. Lucy Short died intestate in 1940, leaving surviving her her husband, Morgan Short, and an infant son, Billy Short. Cassie Meade died intestate, unmarried and without issue, in 1936.

David Meade and his wife, on May 15, 1908, by deed duly recorded, conveyed to Will N. Meade and Mary Meade, his wife, a tract of land containing 47 acres and 131 square poles. This deed stated a consideration of $200 cash paid by the grantees, and further contained the following provision: "It is understood by the parties to this and that this is to be the entire interest of the said W. N. Meade *is* his the said David Meade's estate". Will Meade, in addition, received from his father a mule of the value of $75 and a cow worth $50.

Immediately after the death of David Meade, W. N. Meade had a writing prepared, in which all of the heirs at law of David Meade, including Will N. Meade, united, conveying to their mother, Nancy Meade, the exclusive right to hold and possess all of the property of her late husband during her natural life, with the further right to use, sell or dispose of it as pleased her. Nancy Meade thereupon took charge of the said property and held and used the same until her death. She, and some of her children, not including Will N. Meade, lived as one family upon the land with Marsh Meade as its head and representative.

The $400 in the bank was lost by the failure of the bank and the sheep were sold and the mother used the money.

In 1938 (after the death of Cassie Meade), Nancy Meade, Alfred Meade, Lucy Short and Polly Baker and her husband united in a deed to Marsh Meade, conveying to him 36 acres of the land of which David Meade died possessed for the sum of $600, the greater portion of the consideration

being represented by the cost of repairs and taxes on the property paid by the grantee.

Prior to this proceeding Marsh Meade paid the taxes on his father's estate, amounting to approximately $40.00 per year for 16 years, and also built, at his own expenditure of about $650, a road to the property. In November, 1940, Marsh Meade, Alfred Meade, Polly Baker, Morgan Short, the father of Billy Short, and Nancy Meade leased the coal rights under the 15 acres surrounding the home place to K. W. Crabtree for 5 years at a royalty of 25c per ton. Marsh Meade testified that as of the 15th day of February, 1944, he had received $2,530.91 in royalties, out of which he had paid to his mother $596.08 prior to her death, the remainder, in accordance with an agreement with his mother, having been divided between the lessors in the royalty agreement. The record does not show what part of the above royalty was received prior to April 3, 1942, the date of Nancy Meade's death, nor payments, if any, subsequent to February 15, 1944.

Cassie Meade was an invalid from the year 1918, and it appears from the uncontradicted evidence that it was agreed by all of her brothers and sisters that Marsh Meade should provide for her and pay all doctors' bills, for which he was to receive her share in their father's estate: This agreement was carried out on the part of Marsh, and he expended in pursuance thereof, an amount exceeding the value of her land. No written conveyance of Cassie's share was ever made to Marsh or to any one else.

G. Mark French, after a controversy with Marsh Meade over rights in a road which ran over the land of the latter to a coal mining project of the former, purchased all of the rights and interest of Stella Buchanan in the estate of her grandfather, David Meade, and in the share originally owned by her aunt, Cassie Meade, for $200. The date of the agreement is not given, but it was apparently subsequent to the date of the lease of the coal rights to K. W. Crabtree. Nor is the purchase agreement and its terms shown in the record, but the contract and conveyance is undisputed.

Will Meade had been a justice of the peace for many years and had maintained his business office in the office of G. Mark French, who is a practicing attorney. The two were on intimate terms and French was cognizant of all of the circumstances herein related, including the joint conveyance of all of the rights and interests of all of the heirs of the estate of David Meade to Nancy Meade for her natural life.

On August 27, 1943, the appellants filed their bill in this proceeding against Marsh Meade, Alfred Meade, Polly Baker, Billy Short, an infant, Morgan Short, surviving husband of Lucy Short, deceased, the Clinchfield Coal Corporation, N. H. Stanley, Administrator of David Meade, deceased, K. W. Crabtree and Stella Buchanan. The bill, though loosely drawn, set out the material facts relative to the death of David Meade, intestate, the name of his heirs at law and the nature of his property. It alleged that David Meade had in his life time sold the coal under his land, with the exception of the 15 acres mentioned, to the Clinchfield Coal Corporation, but that the 15 acres had not been definitely located and determined; that Stella Buchanan had sold and conveyed to G. Mark French all of her interest in the estates of David Meade, her grandfather, and Cassie Meade, her aunt; that N. H. Stanley had been duly appointed and qualified as administrator of the estate of David Meade, deceased, but no property had come into his hands; that Marsh Meade, Alfred Meade, Polly Baker and Billy Short had leased the coal land on the 15 acre tract to K. W. Crabtree and had received and converted to their own use $2,500 in royalties therefrom; and that Will N. Meade had received a tract of land from his father of the value of $200 by way of advancement, which amount the complainants were willing to pay into court in order that they might share in the distribution and settlement of the estate of David Meade. They prayed an accounting of any advancement received by any of the heirs of David Meade, and of the rents, profits and royalties from his estate after his death; that judgment be granted against the defendants for such sums as may have

come into their hands, and that the lands of which David Meade and Cassie Meade died seized be partitioned among the then heirs at law.

Marsh Meade, Alfred Meade, Polly Baker and Morgan Short filed an answer in which they denied that they had received any property in which the complainants had any interest or proper claim. They averred that W. N. Meade had received an advancement of greater value than his share in his father's estate. That Marsh Meade had paid more than $1,500 in doctor and hospital bills for his sister, Cassie, before her death, which was more than her interest in her father's estate was worth. That for such expenditure it was agreed by Cassie Meade and her brothers and sisters that Marsh Meade was to have Cassie's interest in her father's estate, and that Nancy Meade, the widow of David Meade, had taken charge of the estate of her husband and used and enjoyed the same, with the full knowledge and consent of all parties, including W. N. Meade and his heirs at law. The infant, Billy Short, filed a formal answer by his guardian *ad litem.*

The Clinchfield Coal Corporation filed an answer and cross-bill in which it prayed that its rights be ascertained and determined, and that the 15 acres reserved by David Meade be surveyed and set apart to his estate. The defendants, Marsh Meade, Alfred Meade, Polly Baker and Morgan Short joined in the prayer of the cross-bill and the infant likewise filed a formal answer by his guardian *ad litem.*

Thereafter depositions were taken from time to time, beginning on March 10, 1944, and continuing through May 17, 1944, and the case submitted thereon to the Chancellor.

The court ascertained and fixed the location of the 15 acre reservation and dismissed the Clinchfield Coal Corporation as a party to the proceeding. On September 21, 1944, the court being of the opinion that the evidence did not support the allegations of the complainants' bill, dismissed it and ordered the cause to be stricken from the docket. From this decree the appellants, Tona Meade Ratliff and G. Mark French, assignee of Stella Buchanan, obtained this appeal.

The record presents but two questions for our consideration. The first is whether the value of the advancements to Will Meade were of less value than he otherwise would have received in the division of the estate of David Meade if the advancements had not been made; and the second is whether Marsh Meade is entitled to the entire share of Cassie Meade in the estate of her father, or that share descended and passed to Nancy Meade, the mother of Cassie Meade, and from Nancy Meade to her heirs at law.

Under the Virginia statutory doctrine of hotchpot, Virginia Code 1942 (Michie), sec. 5278, where the descendant of a person dying intestate shall have received from such intestate in his life-time any estate, real or personal, by way of advancement, "and he, or any descendant of his, shall come into the partition and distribution of the estate with the other parceners and distributees, such advancement shall be brought into hotchpot with the whole estate, real and personal, descended or distributable, and thereupon such party shall be entitled to his proper portion of the estate, real and personal".

Although contrary to the weight of authority from some jurisdictions, the above rule prevails in Virginia notwithstanding an agreement or covenant may have been entered into by a descendant with his ancestor at the time of the advancement, that he, by the acceptance of the advancement, relinquishes all interest in or claim to any portion of the estate then owned or which might be thereafter acquired by the ancestor and as to which he may die intestate. Minor on Real Property (2nd ed.), (Ribble), vol. 2, page 1192; *Headrick v. McDowell*, 102 Va. 124, 45 S. E. 804, 102 Am. St. Rep. 843, 65 L. R. A. 578; *McCoy v. McCoy*, 105 Va. 829, 54 S. E. 995.

The general rule is that advancements are to be accounted for as of the value they bore when received, neither rents, interest nor profits being charged against the heir or distributee. *Puryear v. Cabell*, 24 Gratt. (65 Va.) 260; *McCoy v. McCoy, supra; Ingram v. Ingram*, 130 Va. 329,

107 S. E. 653, 26 A. L. R. 1175; *Osborne* v. *Richmond*, 131 Va. 261, 108 S. E. 560.

It is admitted by Mary Meade that she paid nothing for the conveyance of the tract of 47 acres of land to her husband and herself in 1908. It is obvious from the language of the deed that the conveyance of the land was intended as an advancement to her husband. It is so stated in the clear and unambiguous provision of the deed hereinbefore quoted. In *Bruce* v. *Slemp*, 82 Va. 352, 4 S. E. 692, a gift by a wife's father to the husband during coverture was deemed an advancement to the wife. In *McDearman* v. *Hodnett*, 83 Va. 281, 2 S. E. 643, a gift to a son-in-law was deemed an advancement to the grantor's daughter.

The first question then becomes one merely of fact. Was the advancement to Will Meade, as of the time it was made, without rent, interest or profit being charged against him, less than a one-sixth share of the whole estate of his father including the advancement?

The evidence of the respective values of the said advancement to Will Meade and of David Meade's estate is in conflict. The majority of the witnesses estimated the value of the land conveyed to Will Meade as between $1,000 and $1,500 at the time made. Others placed the value between $400 and $700. Credible witnesses valued David Meade's property from $1,200 to $2,000, while one witness placed it as worth between $600 and $800.

At a date not given in the record, Marsh Meade purchased from Will Meade the 47 acres of land for the sum of $1,350, without the dwelling and the timber. The house had been destroyed and Will Meade had previously sold the timber on the land for several hundred dollars. It is further in evidence that at the time of the sale to Marsh Meade the land was worth less than it was in 1908.

It must be remembered that Will Meade joined in granting to his mother the right to use, sell and dispose of any portion of the property during her life-time. He thereby gave to his mother whatever rights he had in the property and in-

come from his father's estate, and his children cannot now claim such profits as a part of the estate to which their father was entitled. They cannot object to the disposition thereof made by the mother during her life-time. What has been received from the royalty on the leased coal land since the death of the mother is not in evidence.

The coal rights in the 15 acres of land continued to be of small value for many years after the death of David Meade. They became valuable only after Marsh Meade, at his own expense, built roads leading to it so that the coal could be brought to a market. K. W. Crabtree testified that there were only about 5 or 6 acres of good coal land left undeveloped. No one testified as to its value.

The conclusion of the learned Chancellor on the values of the respective properties is based on conflicting evidence. Every person interested in the estate of David Meade, other than the assignee of one of the three children of Will Meade and Tona Ratliff, has indicated assent to the fact that the advancements to Will Meade were greater than a one-sixth share of the estate of David Meade. Mary Meade, the widow of Will Meade, testified that her husband regarded the advancements to him as his full, just and proper portion in the estate of his father. Both Mary Meade and her daughter, Delphia Bise, expressed regret that this proceeding had been instituted.

By any reasonable method of calculation, based upon the preponderant credible evidence favorable to the brothers and sisters of Will Meade, which evidence the trial court accepted, and the burden of which acceptance the plaintiffs in error have not overcome, it is clear that the advancements to Will Meade, after giving him credit for $200 paid as part consideration for the land, were in excess of the value of the shares descended or distributable to the heirs at law of the estate of David Meade. Therefore, the trial court did not err in holding that the evidence did not support the allegations of the bill in this particular.

The question as to who is now entitled to the share of Cassie Meade in the estate of her father is one purely of law.

There is evidence that the children of David Meade, including Cassie and Will, agreed that the interest of Cassie Meade in her father's estate should go to Marsh Meade for the care and support he provided for her. However, Cassie Meade died intestate, without conveying her property to her brother, and no suit has been instituted by the latter to enforce specific performance since her death in 1936.

This question is answered by two Virginia statutes, Virginia Code 1942 (Michie), sec. 5141, and sec. 5264.

Section 5141 reads as follows: "No estate of inheritance or freehold, or for a term of more than five years, in lands, shall be conveyed unless by deed or will, nor shall any voluntary partition of lands by co-parceners, having such an estate therein, be made, except by deed; nor shall any right to a conveyance of any such estate or term in land accrue to the donee of the land or those claiming under him, under a gift or promise of a gift of the same hereafter made and not in writing, although such gift or promise be followed by possession thereunder and improvement of the land by the donee or those claiming under him."

Under sec. 5264 the share of Cassie Meade in the land of her father descended to her mother, Nancy Meade. Nancy Meade having died intestate after the death of her son, Will Meade, a one-fifth interest therein descended and passed to his three children, Tona N. Ratliff, Stella Buchanan and Delphia Bise.

The bill sufficiently alleges the right of the complainants to a partition of the share of Cassie Meade which descended to her mother in one of the methods provided by law, subject, of course, to any liens or claims properly provable against the same.

For the foregoing reasons we are of opinion that the trial court erred in dismissing the bill of the appellants for lack of proof of the allegations relating to the right of the appellants to share in the estate of Cassie Meade, which descended and passed to Nancy Meade, the grandmother of the children of Will Meade.

This cause is, therefore, remanded to the trial court with direction that it be reinstated on the docket and such further proceedings taken therein as may be necessary to determine the rights of the respective parties on the issue last mentioned.

*Affirmed in part, reversed in part and remanded.*