Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HILL V. STARK AND OTHERS.

### January 24, 1918.

1. ADVANCEMENT—*Definition.*—It is difficult to frame a definition of the term advancements with accuracy and precision, inasmuch as it is used in both a popular and a technical sense. It has been enlarged in many instances to meet the apparent justice of particular cases, and restricted in other instances for the same reason; moreover the statutory enactments of various jurisdictions have to some extent changed its common law meaning. Notwithstanding the difficulty of framing a definition which will cover every case, there are certain well determined and essential elements that are usually accepted as being necessary to the existence of an advancement.

2. ADVANCEMENT — *Definition — Technical Sense.*—In its strictest technical sense an advancement is a perfect and irrevocable gift, not required by law, made by a parent during his lifetime to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate.

3. ADVANCEMENT—*Essential Elements.*—In general, two elements are essential to constitute an advancement, a gift by the parent to the child and the intention by the donor that the gift shall be an advancement. But the latter may be inferred from the former. Nevertheless, a gift, in contradistinction to a transfer for valuable consideration, is indispensable.

4. ADVANCEMENT—*What Constitutes—Case at Bar.*—A contract was entered into between a mother and her son. The contract provided that the mother employed her son as her agent and attorney in fact to manage and control her interest in a partnership between herself and another, according to his judgment and discretion without any interference on the part of the mother. As compensation for his services the son was to receive the profits of the business; and if his mother died during the continuance of the partnership, her interest therein, including her contribution to the capital stock, was to pass to and become the property of the son, and should not pass to her personal representative, but should the son die during the con-

tinuance of the contract, then the mother was to have the origi-
nal capital, but the profits were to go to the son's estate. The
son also agreed to pay his mother the interest on the capital
invested by her in the partnership during the continuance of
the contract.

*Held:* That, in this agreement all the elements of an executory
contract between the mother and son were present, and that the
contribution by the mother of the capital towards the forma-
tion of the partnership was not a gift by the mother to her
son, and that he could not be compelled to bring it into hotchpot
before participating in his mother's estate. Moreover, from
the agreed statement of facts it appeared that the mother did
not consider the capital advanced to the partnership part of
her estate, or an advancement to her son, so that both of the
essential elements of an advancement were wanting.

Appeal from a decree of the Circuit Court of Culpeper
county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Edwin H. Gibson,* for the appellant.

*Grimsley & Miller,* for the appellees.

WHITTLE, P., delivered the opinion of the court.

The case is this: Appellant, Adina Hill, a daughter of
Kate N. Stark, deceased, filed her bill in equity against the
administrator and the other heirs and distributees of her
mother, who died intestate, for partition and distribution of
her real and personal estate among those entitled. The sole
controversy arises out of the prayer that the defendant, J. C.
Stark, a brother of complainant, be denied participation in
the distribution of the estate until he shall have brought into
hotchpot the sum of $4,000, alleged to have been received by
him as an advancement from the decedent in her lifetime.

36

J. C. Stark, in his answer, controverts the allegation that the sum in dispute was an advancement, but avers that he was a purchaser for value of the fund by contract in writing.

From a decree sustaining the defendant's contention, this appeal was taken.

The contract referred to was entered into by Kate N. Stark and J. C. Stark on August 16, 1909, and in substance is as follows: The first party employed the second party as her agent and attorney in fact to manage and control her interest in a partnership between herself and T. H. Brown, as Brown & Stark, in the dry goods, boot and shoe business at Culpeper. The second party was to manage and control the interest of the first party in the business according to his judgment and discretion without interference on her part, and to act in all respects in connection with the business as if he was the partner instead of the first party, and his name was so to appear in the firm. As compensation for his services the second party was to receive the profits of the business; and if the first party died during the continuance of the partnership, her interest therein, including her contribution to the capital stock, was "at once to pass to and become the property of the party of the second part, and shall not pass to the personal representative of the party of the first part, but should the party of the second part die during the continuance of this contract, then the party of the first part to have the original capital, and the profits to go to the estate of the party of the second part.

"In consideration of the premise and undertakings on the part of the party of the first part, the party of the second part agrees to pay to the party of the first part, the interest on $4,000 during the continuance of this contract, such interest to be paid in equal monthly instalments."

The original contract stipulated that the partnership should last for three years; but afterwards it was agreed that it should continue until such time as should be mutually

agreed on by the parties. Mrs. Kate N. Stark died in August, 1916, at which time the contract was in full force and effect; and up to the time of her death J. C. Stark had performed all obligations assumed by him.

In 1 R. C. L., at sec. 1, p. 653, it is said: "It is difficult to frame a definition of the term advancements with accuracy and precision, inasmuch as it is used in both a popular and a technical sense. It has been enlarged in many instances to meet the apparent justice of particular cases and restricted in other instances for the same reason; moreover the statutory enactments of various jurisdictions have to some extent changed its common law meaning. Notwithstanding the difficulty of framing a definition which will cover every case, there are certain well determined and essential elements that are usually accepted as being necessary to the existence of an advancement. In its strictest technical sense an advancement is a perfect and irrevocable gift, not required by law, made by a parent during his lifetime to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate." See also, the definition of advancement given in *Darne's Ex'r* v. *Lloyd*, 82 Va. 859, 5 S. E. 87, 3 Am. St. Rep. 123, and in notes to Code, sec. 2561.

In general, two elements are essential to constitute an advancement, a gift by the parent to the child and the intention by the donor that the gift shall be an advancement. But the latter may be inferred from the former. Nevertheless, a gift, in contradistinction to a transfer for valuable consideration, is indispensable.

Here, the agreement was for the mutual convenience of the parties. The son contributed his time and services in return for contemplated profits, the fruits of his labor, aided by the mother's capital, for the use of which he was to pay its earning value in interest at monthly intervals. But in

the event of his surviving his mother during the continuance of the business, the capital was to be his property; but if she survived him, it was to remain her property, and the profits alone, if any, were to go to his estate. It may be that, in the former contingency, the stipulations of the contract were more favorable to the son; yet, in the latter, they were not more so than in any other case in which a person conducted a mercantile business on borrowed capital. It is not essential, however, for us, in construing this contract, to attempt to balance benefits. There is no suggestion of unfairness in the transaction, or that the parties were not competent to contract. Indeed, all the elements of a contract executory were present: "A *mutual agreement* between * * * *competent parties* for a *valuable consideration*, touching a lawful subject matter." 4 Minor's Inst., Pt. I, p. 16.

The learned author, at the same page, observes: The amount of the consideration, so it be appreciable, is immaterial, save only that, if grossly inadequate, it may tend to *prove a fraud.*"

Our conclusion on this branch if the case is, that the fact of a gift from the mother to the son is not established.

Moreover, it was agreed that on the trial of the cause the court should consider an agreed statement of facts as duly proven, with the right to object to any fact as competent evidence. The statement, in part, is as follows:

"* * * Fifth. That if T. H. Brown were called as a witness he would testify that at the time of signing the paper extending the terms of said contract, which paper was witnessed by him, he would say, at the time of the execution of such paper Kate N. Stark stated to him, at her death the said $4,000 invested in said business should constitute no part of her estate, and that nothing was said as to the distribution of her other estate, nor was anything said as to whether J. Clifford Stark was or was not to account for four thousand dollars invested in the firm of Brown & Stark in the distribution of her estate."

This statement of Mrs. Stark is substantially a repetition of one of the stipulations of the contract, and shows that, in the event of her son surviving her, she did not consider the four thousand dollars part of her estate, or an advancement to him, which necessarily would result were it required to be brought into hotchpot. So that both of the essential constituents of an advancement are wanting.

For these reasons we are of opinion to affirm the decree.

*Affirmed.*

SIMS, J., dissenting:

I cannot concur in the conclusion of the majority opinion, "that the fact of a gift from the mother to the son is not established," or "that the statement of Mrs. Stark," referred to in the opinion, "shows that, in the event of her son surviving her, she did not consider the four thousand dollars * * * as an advancement to him."

The subject in controversy is not the estate in the $4,000 for the life of the mother, but the estate in remainder in such fund after the death of the mother, in the event of her son surviving her. The latter estate was the subject of the gift or purchase, as the case may be, and that only. I am unable to discover any consideration whatever, even the smallest, moving from the son, to sustain the claim of the latter that he was a purchaser for value of such estate in remainder.

Now as to the life estate aforesaid in said fund, I can see that the son was a purchaser for value in a certain sense. He agreed to pay and did pay to his mother the legal rate of interest on this fund during her lifetime, which the money would have earned by the loan of it to any one whomsoever. But he did not agree to pay, nor did he pay her anything more; nor was she to receive directly or indirectly anything more for the use of such money during his life, or for the estate in it in remainder after her death. The contract as it comes before us, subject to the stipulation that

it should "continue until such time as may be mutually agreed upon by both parties hereto," was in effect a loan of the $4,000 from the mother to the son during her life, unless that contract should be changed by her with his consent. By mutual agreement between the mother and son the money was to be used in a certain way during the continuance of the loan, namely, it was to remain invested in the capital stock of the firm of Brown & Stark, but this was in no way whatsoever for the benefit of the mother. She was not to receive one cent of the profits such capital might earn in the business of said firm during the continuance of such loan to the son. Such use of the money was to be for the sole benefit of the son, even to the extent that not only should he receive all such profit during his life, but in case of his death during the continuance of such loan, such profit up to the time of his death should pass to his personal representative and not to his mother or her personal representative. It is true the son was to give his personal services and attention to the business of said firm; his name was to appear as a partner therein in lieu of his mother's name; but this, too, was in no way for her benefit, being solely for the benefit of the son; the effect being to set him up and start him in business in life in a responsible position and in one which promised to be of advantage to him from a business standpoint, and which indeed proved to be so. He was not to act as the agent of the mother in this relationship of partner in the said firm; he was to act "according to his (own) judgment and discretion, without interference by the party of the first part (the mother) and to act in all respects in connection with said business as if he were the partner instead of the party of the first part." It is true that the son acted in this matter under a power of attorney created by the contract, but it was a power coupled with an interest—indeed with the whole interest to be derived from his action thereunder—and a power irrevocable, save by his consent, during the life of the mother.

Such was the nature and effect of the contract with re-
spect to the estate in the fund during the joint lives of the
mother and son. It reserved a life estate in the mother in
the fund to the extent of the legal rate of interest thereon;
and, further, it vested in the son the absolute estate in re-
mainder in said fund after the death of the mother in the
event that the son survived her. As to such estate in re-
mainder, it seems to me clear that it was a gift, pure and
simple, from the mother to the son, without an iota of con-
sideration, whether of benefit to the mother or of change of
the *status quo ante* of the son to his injury, moving from the
son to support it. Its origin was in her bounty; it came
from her estate; it was practically the son's aliquot part of
her whole estate, and its object was to continue him in busi-
ness as a member of said firm which her loan to him afore-
said had so happily begun; and it had no consideration to
support it save only the love and affection of the mother for
the son. And the form of the gift was wise and appropriate
in view of the prior habits and lack of success in business
of the son.

As to whether the gift was "by way of advancement,"
under section 2561, Code of Virginia:

As stated in the majority opinion: "In general, two ele-
ments are essential to establish an advancement, a gift by
the parent to the child and the intention by the donor that
the gift should be an advancement. But the latter may be
inferred from the former." This is true, because, as stated
in 1 R. C. L., p. 655, sec. 3, "The doctrine (of advancements)
rests on the supposed desire of an ancestor to equalize his
estate among his heirs, not only as to the property left at the
time of his death, but as to all property that came from him,
so that one child shall not be preferred to another child in the
final settlement of his estate. It has for its object the fur-
therance of that maxim of equity which declares that equal-
ity is equity." And as further stated, *Idem,* p. 668, sec. 21:

"And the circumstances surrounding the transaction, or in truth the mere gift by a parent to a child, may be such as to create a presumption of an advancement. For the doctrine that a parent desires to distribute his estate equally among all his children is so strong that it will be presumed that a parent who during his lifetime makes a substantial gift to a child intended such gift to be an advancement; and hence it is often stated that a gift to a child or to an heir by an ancestor in his lifetime is *prima facie* an advancement." To the same effect are the Virginia decisions. *Watkins* v. *Young,* 31 Gratt. (72 Va.) 84; *Gregory* v. *Winston,* 23 Gratt. (64 Va.) 102; *McDearman* v. *Hodnett,* 83 Va. 281, 2 S. E. 643; *Bruce* v. *Slemp,* 82 Va. 352, 4 S. E. 692; *Carter* v. *Cutting,* 5 Munf. (19 Va.) 223.

It is said by some of the authorities on this subject that the gift must be complete and must be irrevocable in the lifetime of the donor in order to constitute an advancement. Thornton on Gifts and Advancements, sec. 510, 527, 530; *Darne's Ex'r* v. *Lloyd,* 82 Va. 861, 5 S. E. 87, 3 Am. St. Rep. 123; *Brook* v. *Latimer,* 44 Kan. 431, 24 Pac. 946, 11 L. R. A. 805, 21 Am. St. Rep. 292. But this has reference to the *title* to the subject of the gift, and not to the time of the entrance into the possession and enjoyment of the subject of the gift. 1 R. C. L., sec. 10, pp. 660, 661. An estate which is secured to a child to commence *in futuro,* after the donor's death, and upon a contingency that * * * will arise within a reasonable time, may be an advancement." 1 R. C. L., sec. 8, p. 659. Now in the cause before us the title to the subject of the gift in remainder after the life estate of the donor, subject to the contingency that the donee survived the donor, was vested in the son as donee in the lifetime of the donor irrevocably by the contract aforesaid so far as the donor was concerned—the gift could not be revoked without the consent of the son, the donee. It was an estate which was vested in him by the contract. It was an estate

which he could have alienated, which is one of the most characteristic incidents of an advancement. 1 R. C. L., sec. 10, p. 661.

Coming now to the consideration of the only evidence in the case referred to in the majority opinion as bearing on the actual intention of the donor with respect to the gift being or not being an advancement, I do not think the statement of Mrs. Stark has the meaning attributed to it in the majority opinion. That statement itself went no further than to say that "at her death the $4,000 invested in said business should constitute no part of her estate." This statement, as the majority opinion correctly states, is substantially but a repetition of one of the stipulations of the contract, "and shows that * * * she did not consider the four thousand dollars part of her estate." And in fact it was not a part of her estate, if it was an advancement. As stated in 1 R. C. L., sec. 34, p. 677: "Furthermore, it should be noted that an advancement is no part of an estate * * *." A donee need not bring his advancement into hotchpot. His title to it is complete upon the happening of the event upon which his right to enter into possession of it was conditioned, if the gift be so conditioned upon any event, and it is not a part of the estate of the donor. And this is still true, although the donee may bring his gift into hotchpot. As said by the same learned editors of 1 R. C. L. (sec. 25, p. 671): "And a donee, by bringing his advancement into hotchpot, does not thereby relinquish his title to the advancement, the purpose of bringing it in being merely to ascertain whether it exceeds or falls short of his equal share."

Hence, in the case before us, nothing appears to rebut the *prima facie* presumption arising from the gift itself from a mother to a son that it was intended as an advancement. And, indeed, all the attendant incidents of the gift, its mani-

37

fest object and all the surrounding circumstances furnish convincing affirmative evidence that it was intended as an advancement.

For the foregoing reasons I am constrained to the opinion that there was error in the decree complained of, and that the cause should be reversed.