## Staunton.

## PAYNE, ET ALS V. PAYNE, ET ALS.

September 16, 1920.

1. ADVANCEMENTS—*Hotchpot—Doctrine at Common Law and in Virginia—Partial Intestacy.*—Under the Virginia statute the doctrine of hotchpot has been greatly enlarged. At the common law, it only applied when the decedent died wholly intestate, while under the Virginia statute (Code 1919, sec. 5278) it is only necessary that there be a partial intestacy.

2. ADVANCEMENTS—*Hotchpot—Intent of Code of 1919, Section 5278.* —The intent of section 5278, Code of 1919, is to bring about, as nearly as may be, an equal division of the estate of a decedent among his children or other descendants, except so far as he may have himself distributed his estate unequally. The descendant who has received an advancement is not required to submit to a redivision of the property by giving up what he has already received, but is only subjected to the alternative of so surrendering what he has received, or of being excluded from any participation in the residue of the decedent's estate which has not been disposed of.

3. ADVANCEMENTS—*Hotchpot—Intent of Code of 1919, Section 5278.* —Code of 1919, section 5278, is operative if the decedent dies intestate as to part of his property and one or more of his descendants who have received gifts by way of advancement, also claim the right to participate in the distribution of the property which has not been disposed of, either in the lifetime of the decedent or by his will. The statute does not assume to interfere with the freedom of the ancestor to prefer one or more of his descendants in the distribution of his estate, but applies only where, having distributed a part of his estate to them, he has left part of it undisposed of, to be distributed under the statute of descents and distributions.

4. ADVANCEMENTS—*Hotchpot—Intent of Code of 1919, Section 5278.* —If decedents who have received advancements elect to account for their advancements, they are entitled to share in the property to be divided, being charged with the value of the advancement at the time it was made, without interest; on the other hand, if they elect not to do so, they will be debarred from participation in such further distribution.

5. ADVANCEMENTS—*Hotchpot—When Doctrine Does Not Apply—Definition of Advancements—Intention of Donor.*—The doctrine does not apply unless the property has been received from the ancestor, either in his lifetime, or by his will, and by way of advancement, which is defined as a gift from an ancestor to a descendant for the purpose of advancing him in life in anticipation of the final division of the donor's estate between his descendants after his death. The intention of the testator determines the question as to whether or not the gift is an advancement.

6. ADVANCEMENTS—*Hotchpot—Presumption in Favor of Advancement.*—Where there is a gift from a parent to a child, supposing the gift to be adapted to advance the latter in life, it would seem that there is a *prima facie* presumption that the gift is intended as an advancement.

7. ADVANCEMENTS—*Hotchpot—Whether Grants to Testator's Children Were Advancements—Case at Bar.*—In the instant case the will of testator and the deeds under which he had granted property to his children in his lifetime contained internal affirmative evidence of the fact that the gifts were intended as advancements. The gifts to the children were substantial, some about equal to and others exceeding in value their aliquot shares of the estate had it all been divided in accordance with the statute of descents and distributions. That the father in making the gifts to his children by deed and will had the final division of his property in mind was manifest.

*Held:* That the gifts to the children were advancements.

8. ADVANCEMENTS—*Advancements Distinguished From Gifts—Intent Governs.*—If, from all the circumstances surrounding a particular case, it can be said that a parent intended a transfer of property to a child to represent a portion of the child's supposed share in the parent's estate, such transfer will be treated in law as an advancement. The converse is, as a matter of course, true; hence, where it appears that the ancestor intended that a gift to his child should not be treated as an advancement, such intention will be respected and enforced.

9. WILLS—*Dower—Bequest in Lieu of Dower—Case at Bar.*—A will, after devising the testator's real property to his children, contained the following provision: "My personal property I will to my wife."

*Held:* That under Code of 1919, section 5120, the bequest of the personal property to the wife was in lieu of dower.

10. WILLS—*Dower—Bequest in Lieu of Dower.*—Code of 1919, section 5120, expressly provides that every bequest, devise or

conveyance to the wife shall be taken to be intended in lieu of dower, unless the contrary intention plainly appears in such deed or will, or in some other writing signed by the party making the provision.

11. DELIVERY—*Deeds—What Constitutes Delivery.*—There is a delivery of a deed if it was the intention of the grantor to deliver which was effectuated by words or acts, and this is a question of fact to be gathered from all of the circumstances of the particular case.

12. DEEDS—*Delivery—Possession of Grantor.*—Where a deed was intended to be considered as delivered, it will not, as between the grantor and the grantee, be invalid for want of delivery, because of the fact that it remains in the grantor's possession. Likewise, there may be a sufficient delivery where the grantor by his acts or words expresses an intention to deliver the instrument and there is nothing to qualify the delivery. This is particularly true where a conveyance is one of voluntary settlement and the more so where the beneficiary is unable to protect his own interests, as where he is a child. Where the grantor reserves a life estate in the property and its possession and control, his retention of the deed is not inconsistent with the idea that a delivery was intended.

13. DEEDS—*Delivery—Possession of Grantor—"Deeded"—Case at Bar.*—In the instant case the testator, a lawyer, recited in his will that he had "deeded" to his son the property involved. The deed to the son was found along with the will after the death of the testator.

    *Held:* That under the circumstances of the case, the testator, by the language of his will and his subsequent action in acknowledging the deed and placing it with his will, clearly indicated his intention to deliver it to the grantee and to make it then operative as his deed. Delivery might be inferred from the use of the word "deeded" by the testator, a lawyer, the word importing and expressing the finality of the transaction, the testator knowing there could be no valid conveyance unless the deed should be delivered before his death.

14. WILLS—*Deeds—Will Referring to Deed.*—Where a testator in his will clearly stated that one of his sons was to have certain real property previously deeded by the testator to the son, it makes no difference whether the deed to the son was delivered in the lifetime of the testator or not, as if the deed was not delivered, the property passes to the son under the will.

15. WILLS—*Deeds—Undelivered Deed.*—A deed, even if undelivered, may be referred to to identify property devised by a will to the grantee.

16. WILLS—*Construction—Intention.*—In construing a will, the intention of the testator must first be ascertained from the words used therein, and if this intention is manifest the will is effective.

17. WILLS—*Parol Evidence—Subject or Object of Devise or Bequest.*—Parol evidence is always admissible to identify the subject of a devise or bequest as well as the person who is the object of the testator's bounty.

Appeal from a decree of the Circuit Court of Tazewell county, Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*S. M. B. Coulling* and *Chapman, Peery & Buchanan,* for the appellants.

*Harman & Pobst,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

W. P. Payne disposed of a large portion of his property by will in these words:

"BANDY, VA., June 1, 1914.

"I, W. P. Payne, being of sound mind and disposing memory make this my last will and Testament, first I have heretofore Deeded to my son J. Payne, what land I intend him to have and to my son C. C. Payne, what I intend him to have which Deed will be found along with this will, My Farm in the *Seynken* waters my Home place I will to my son B. I. Payne and Daughter Amanda B. Young and the heirs of their bod*dy*. With the understanding that B. I. Payne conveys to my Daughter Julia Bell Young and the heirs of her bod*dy* the land that I have heretofore conveyed to him and further that Amanda B. Young is to pay Julia

Bell Young two thousand dollars and the Home place is to be devided equally between B. I. Pain, & Amanda B. Young, and the heirs of their bod*dy*, and the said B. I. Payne is to pay Auther Payne My Grand Son $1,000 when he arrives at the age of 25 years of age and my son C. C. Payne is to pay my Grand Daughter Merdel Payne $500 when she becomes 25 years of age my personal property I will to my wife. I know the children will not *tun* out and could not if they so wished.

"My Hotel property at Tazewell I will to all my living children, at my death I have give the matter considerable thought and have done the best I could and if *they* is any one not satisfied with what I have done he is to have nothing from my estate I have made it and *feal* that I have the right to do as I think best for all and I have tried to do that in making this my will and I hope they will all be satisfied and do well and add more to it, I *feal* that they think I ought to have made more for them but I have done the best I could for them so may God bless them is my Prayer.

"This is my signature.

"W. P. PAYNE."

He left surviving him his widow, Theresa J. Payne, five children and two grandchildren. The value of the property distributed by deeds and by the will was $83,916.77, distributed as follows: To his children, J. Payne, $10,200; C. C. Payne, $9,700; B. I. Payne, $16,700; Amanda B. Young, $15,700; Julia Belle Young $12,400; to two grandchildren, George Arthur Payne, $1,000; Myrtle Irene Payne, $500, they being children of his deceased son, Scott Payne; and to his widow, Theresa J. Payne, $17,916.77. He died intestate as to three parcels of real estate: A tract of about 12 acres in Tazewell county, worth $600; a house and lot in the town of Tazewell, Va., which was conveyed to him after his will had been executed, about two months prior

to his death, worth about $3,000; and 19¾ acres of land in Wyoming county, W. Va., of small value.

The appellees, the two grandchildren of the testator, instituted their suit against the appellants, asking for partition of the residuum of their grandfather's estate, and alleging in substance that the gifts to his five children by his will and by certain deeds were advancements, and that therefore these five children of the testator could not participate in the partition of such residuum of the estate unless they brought their advancements into hotchpot. They further allege that the gift of all of the personal property to the widow was greatly in excess of her property rights under the law, was in lieu of dower, and that the deed (referred to in the will) from W. P. Payne, the testator, to his son, C. C. Payne, which was found along with the will after the death of the testator, purporting to convey to C. C. Payne the brick residence property, had never been delivered, was therefore null and void as a deed, invalid as a testamentary disposition thereof, and that hence this property was a part of the residuum of the estate undisposed of, and subject to partition in that suit.

The answers denied that the gifts to the five children were advancements, that the property bequeathed to the widow was in lieu of dower, and that the deed from W. P. Payne to C. C. Payne was null and void for lack of delivery, but alleged on the contrary that the deed had been delivered and was valid.

Upon the hearing, the trial court held that the deed from W. P. Payne to C. C. Payne for the brick residence property was duly delivered, was a valid deed, and that he acquired title to the property under the deed and will; and that this gift to C. C. Payne as well as the gifts to his other four children were advancements to them, and unless they would before the next term of court bring such advancements into hotchpot, then the grandchildren should take and hold in

fee simple absolute the real estate in Virginia as to which the testator died intestate; and that the gift to the widow was in lieu of dower. These five children having refused to bring such advancements into hotchpot, the court at the next term entered the decree adjudging the grandchildren entitled to the two parcels of real estate in Virginia of which W. P. Payne died intestate, and appointed a commissioner to convey the property to them. Of those decrees the appellants are here complaining.

The appellants assign two errors.

1. That the court erred in holding that these gifts, by conveyances and by will, by W. P. Payne to his children were advancements, and should therefore be brought into hotchpot in the partition of the real estate of which he died intestate.

[1] Under the Virginia statute the doctrine of hotchpot has been greatly enlarged. At the common law, it only applied when the decedent died wholly intestate, while under the Virginia statute (Code 1919, section 5278) it is only necessary that there be a partial intestacy. The statute reads thus: "Where any descendant of a person dying intestate as to his estate, or any part thereof, shall have received from such intestate in his lifetime, or under his will, any estate, real or personal, by way of advancement, and he or any descendant of his shall come into the partition and distribution of the estate with the other parceners and distributees, such advancement shall be brought into hotchpot with the whole estate, real and personal, descended or distributable, and thereupon such party shall be entitled to his proper portion of the estate, real and personal."

[2-4] The intent of this statute is to bring about, as nearly as may be, an equal division of the estate of a decedent among his children or other descendants, except so far as he may have himself distributed his estate unequally. The descendant who has received an advancement is not re-

quired to submit to a redivision of the property by giving up what he has already received, but is only subjected to the alternative of so surrendering what he has received or of being excluded from any participation in the residue of the decedent's estate which has not been disposed of. Our statute is operative if the decedent dies intestate as to part of his property and one or more of his descendants who have received gifts by way of advancement, also claim the right to participate in the distribution of the property which has not been so disposed of, either in the lifetime of the decedent or by his will. The statute does not assume to interfere with the freedom of the ancestor to prefer one or more of his descendants in the distribution of his estate, but applies only where, having distributed a part of his estate to them, he has left part of it undisposed of, to be distributed under the statute of descents and distributions. In such case, the statute, in its endeavor to accomplish that equality which is equity, equalizes the shares of those descendants, who claim to share in the distribution of the property which has been undisposed of, by requiring that those who have received advancements shall first have their value taken into account—that is, it gives them the option either to do so or to be excluded from sharing in the partition and distribution of the property which the decedent has failed to distribute. If they elect to account for their advancements, they are entitled to share in the property to be divided, being charged with the value of the advancement at the time it was made, without interest; on the other hand, if they elect not to do so, they will be debarred from participation in such further distribution. *McCoy* v. *McCoy,* 105 Va. 829, 54 S. E. 995.

[5] The doctrine does not apply unless the property has been received from the ancestor, either in his lifetime, or by his will, and by way of advancement, which is defined as a gift from an ancestor to a descendant for the purpose of

advancing him in life, in anticipation of the final division of the donor's estate between his descendants after his death. The intention of the testator determines the question as to whether or not the gift is an advancement.

[6] In 2 Minor on Real Property, section 952, it is said: "Whether a gift from a parent to a child, supposing the gift to be adapted to advance the latter in life, is or is not to be deemed an advancement such as must be brought into hotchpot, is admitted to be a matter of intention in the parent; and it is *prima facie* to be presumed to have been so designed." The author states that the trustworthiness of this conclusion is impaired by the case of *Watkins* v. *Young*, 31 Gratt. (72 Va.) 84, where it is doubted that there is a *prima facie* presumption that the gift is intended as an advancement; but this doubt seems to be resolved in favor of Mr. Minor's view in the later cases of *McDearman* v. *Hodnett*, 83 Va. 281, 2 S. E. 643; *Hill* v. *Stark*, 122 Va. 288, 94 S. E. 792; *Johnson* v. *Mundy*, 123 Va. 738, 97 S. E. 564.

[7] It is not necessary to rest this case upon that presumption, because the will and deeds, under which the appellees claim, contain internal affirmative evidence of the fact that these gifts were intended as advancements. The will shows, with reference to the land given to J. Payne and to C. C. Payne, that it constituted "what land" the testator intended each of them to have, and the fact that by a subsequent clause of the will he devises an additional parcel of real estate, the hotel property, to all of his living children, jointly, does not impair the force of the conclusion that he was seeking to divide such land between them to the exclusion of his grandchildren, and did not intend either of them to participate in any further division of it. Between the date of the will and his death, the testator himself sold the major part of this hotel property. In the deed from W. P. Payne to Jay Payne, it is said that the real estate conveyed is "to be Jay Payne's full interest in all the real estate

that the said W. P. Payne, his father, may die seized and possessed of." Then in the deed to C. C. Payne, there is substantially similar language, that "this land is to be C. C. Payne's part of all the real estate that said W. P. Payne may die seized and possessed of." The gifts to all of these children are substantial, some about equal to and others exceeding in value their aliquot shares of the estate had it all been divided in accordance with the statute of descents and distributions.

In Graves' Real Property, section 167, this appears: "What is the evidence that a gift is by way of advancement? This is a question of intention. The character of the gift should be such as to show that it is really anticipatory, and that in making it the father has in mind the final division of his property."

That this father, in making these gifts by deed and will, had the final division of his property in mind, is manifest.

[8] The difference between an advancement and a gift, which is not an advancement, is thus clearly stated in 1 R. C. L., p. 656: "In order to ascertain the nature of a transfer by a parent to his child, it becomes necessary to ascertain the intention of the parent in making it; indeed, it is just as important to establish the intention of the donor as it is to establish the gift itself, for it is well settled by the reported cases that the donor's intention is the controlling principle in the application of the doctrine of advancements, and that whatever the donor intended as an advancement should be so considered without regard to the mode of making it, or of securing its actual enjoyment. Hence, the rule that if, from all the circumstances surrounding a particular case, it can be said that a parent intended a transfer of property to a child to represent a portion of the child's supposed share in the parent's estate, such transfer will be treated in law as an advancement. The converse is, as a matter of course, true; hence, where it appears that the

ancestor intended that a gift to his child should not be treated as an advancement, such intention will be respected and enforced."

*Chinn* v. *Murray*, 4 Gratt. (45 Va.) 348, was decided in 1848, before the Code of 1849 became effective, and at that time in order to apply the doctrine of hotchpot it was necessary that the testator should die wholly intestate; so that what is there said must be understood as referring to the common law doctrine of advancements, before it was changed in Virginia by the revisal of 1849, now Code 1919, section 5278, whereby the doctrine is enlarged and applied where there have been advancements by will and the decedent is partially intestate.

The other pertinent Virginia cases are *Biedler* v. *Biedler*, 87 Va. 300, 12 S. E. 753; *Headrick* v. *McDowell*, 102 Va. 124, 45 S. E. 804, 65 L. R. A. 578, 102 Am. St. Rep. 843, and *Mort* v. *Jones*, 105 Va. 668, 51 S. E. 220, 54 S. E. 857.

We agree with the trial court that these gifts to the five children of the decedent were gifts by way of advancement.

[9, 10] 2. The appellants assign as error the holding that the bequest of all of the personal property to the widow was in lieu of dower.

As to this, it is only necessary to cite the statute, Code 1919, section 5120, which expressly provides that every bequest, devise or conveyance to the wife shall be taken to be intended in lieu of dower, unless the contrary intention plainly appears in such deed or will, or in some other writing signed by the party making the provision. So that this assignment is clearly without merit.

3. The appellees assign as cross-error, that the trial court erred in holding that C. C. Payne took the brick residence property of the estimated value of $9,500 either under the alleged deed or will, claiming that the deed was never delivered, and is therefore null and void, and that there has been no valid testamentary disposition of the property and

therefore this property should be also held to be estate of which the decedent died intestate. The court, however, adjudged that C. C. Payne took a valid title to the property under the deed and will, and that the testator did not die intestate as to it.

The proper solution of the question thus raised requires consideration of it from two points of view. If the deed was delivered, by the grantor in his lifetime, then of course C. C. Payne has good title to the property; but it is equally true that even if the deed was not thus delivered, if the same property was devised by the will, he also has good title.

[11] (a) As to whether or not the deed was delivered: In close and doubtful cases, this question has given rise to much litigation, and while the principles involved have been stated many times, their application to concrete cases is extremely difficult. There was a delivery if there was the intention to deliver which is effectuated by words or acts, and this is a question of fact to be gathered from all of the circumstances of the particular case. 1 Devlin on Real Estate (3rd ed.), section 262. It is noted that the will states that the testator has theretofore "deeded" to his son, C. C. Payne, the land he intends him to have, which deed will be found along with the will. The will was dated June 1, 1914; the deed to C. C. Payne, which was found with the will at a bank along with the testator's other valuable papers, was dated December 15, 1914; and from this the inference arises that notwithstanding the statement of the testator's will, that he had theretofore deeded the land, it is not true that he had at the date of the will executed and acknowledged the deed. It also appears, however, that the deed to the son, Jay Payne, referred to in the will and which was unquestionably delivered and recorded in the testator's lifetime, also bore a date subsequent to the date of the will, viz: November 25, 1914, although the will recited that he

had already deeded it to his son, Jay Payne. We cannot find in the record any explanation of these confusing facts, and will not speculate about them.

[12] We will not undertake to summarize the general rules relating to the delivery of deeds, or to harmonize the hopeless conflict of authority. Volumes have been written upon the subject. We will only call attention to one line of cases, indicated by this quotation from 18 C. J., p. 201: "And where a deed was intended to be considered as delivered, it will not, as between the grantor and the grantee, be invalid for want of delivery, because of the fact that it remains in the grantor's possession. Likewise, there may be a sufficient delivery where the grantor by his acts or words expresses an intention to deliver the instrument and there is nothing to qualify the delivery. This is particularly true where a conveyance is one of voluntary settlement and the more so where the beneficiary is unable to protect his own interests, as where he is a child. Where the grantor reserves a life estate in the property and its possession and control, his retention of the deed is not inconsistent with the idea that a delivery was intended."

Chancellor Kent in *Souverbye* v. *Arden,* 1 Johns. Chy. (N. Y.) 256, says: "A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted nor intended to part with the possession of the deed; and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances beside the mere fact of his retaining it, to show that it was not intended to be absolute."

And the same great master, in *Bunn* v. *Winthrop,* 1 Johns. Chy. (N. Y.) 336, says this: "The instrument is good as a voluntary settlement, though retained by the grantor in his possession until his death. There was no act of his, either at the time or subsequent to the execution of the deed,

which denied an intention contrary to that appearing upon the face of the deed."

In the case of *Scrugham* v. *Wood,* 15 Wend. (N. Y.) 545, 30 Am. Dec. 75, a marriage settlement prepared for execution, read, signed by both parties and acknowledged as a deed before an officer authorized to take acknowledgments, is held to be a valid deed, notwithstanding witnesses present at its execution united in testifying that there was no formal delivery of it, and the deed, after the death of the grantor, was found in his desk among his private papers.

In *Tarbox* v. *Grant,* 56 N. J. Eq. 199, 39 Atl. 378, it is held that where a deed executed by a father to convey his equitable interest in his deceased wife's personal estate to a trustee, for the benefit of his heirs, is shown to have been intended to operate as a voluntary family settlement from the time it was executed, it is valid and creates the trust intended, although not delivered in the grantor's lifetime.

In *Wallace* v. *Berdell,* 97 N. Y. 22, this is said: "In cases of voluntary settlements, courts have gone great lengths in sustaining the validity of deeds, without affirmative proofs of any delivery, and the earlier cases hold that a voluntary settlement, fairly made, is binding in equity, unless there is clear and decisive proof that the grantor never parted or intended to part with possession of the deed, and that if he retains it, there must be other facts to show that it was not intended to be absolute." Citing 1 Johns. Chy. 256; *Barlow* v. *Heneage,* Prec. In Ch. 210; *Clavering* v. *Clavering,* 2 Vern. 473; affirmed 7 Bro. P. C. 410; *Lady Hudson's Case,* 2 Vern. 476; *Johnson* v. *Boyfield,* 1 Ves. Sen. 314; *Exton* v. *Scott,* 6 Simons, 31; and saying: "In all these cases the instrument was shown to have been retained by the grantor until his death, and there were no circumstances tending to show a delivery." The New York court, however, in the case of *Fisher* v. *Hall,* 41 N. Y. 416, declined to follow those cases in so far as they wholly dispensed with

any evidence of delivery, and this according to the weight of authority is doubtless the true rule.

In *Stow* v. *Miller*, 16 Ia. 463, this, which might also be said of the case in judgment, is said: "If a father dies, leaving among his papers a deed of land duly executed in form to one of his children, the law will give effect to the same if there is anything indicating the intention of the intestate that it should become effective; for example, the conveying to other children an equal portion of his real estate, as was done in this case, a court of equity would be much inclined, in order to effectuate the ends of justice, to declare the deed valid, as was done in the case of *Scrugham* v. *Wood*, 15 Wend. 545, and this is about as far as the courts have gone on this subject. It will be observed that the death of the donor, under the circumstances stated, alters the relative condition and rights of the parties. The intervention of this contingency takes away all power to revoke the deed or to make other dispositions of the property which existed in life; and the law, in such an event, will or will not imply a delivery and make effective the deed, according to the intent of the grantor, and the surrounding circumstances of the case."

In *Trask* v. *Trask*, 90 Ia. 318, 57 N. W. 841, 48 Am. St. Rep. 446, the grantor delivered a deed in an envelope to a cashier of a bank, stating to him that the contents of the envelope, if anything happened to him, were for Charlie, his son, and it was held that such delivery was a conveyance *in praesenti* to the son, and took effect upon the death of the grantor by relation from the delivery to the cashier of the bank.

In *Tallman* v. *Cooke*, 39 Ia. 403, it is held that where a deed from a father to a son, in consideration of love and affection, was not recorded until ten years after its execution, and meanwhile remained in the possession of the father as guardian, his testimony that he intended delivery

at the time of execution, was held sufficient to establish the fact that the title then passed to the son.

In *Riegel* v. *Riegel*, 243 Ill. 626, 90 N. E. 1109, it is held that a deed of voluntary settlement is presumptively delivered, and the burden of proof is on one claiming adversely to show absence of delivery, and that such a deed may be effective to vest title in the grantee, though it is retained by the grantor in his possession until his death, where other circumstances do not show an intention contrary to that expressed on the face of the deed.

In *Hoyt* v. *Northup*, 256 Ill. 608, 100 N. E. 165, it is said that: "In case of a voluntary conveyance the retention of the deed in the possession of the grantor will not destroy its effect as a deed, unless there are circumstances showing that it was not intended to be absolute and to operate as a present conveyance."

In *Matson* v. *Johnson*, 48 Wash. 256, 93 Pac. 324, 125 Am. St. Rep. 924, it is held that a deed is effective without manual delivery, where it was executed by a father to his minor children, during his last sickness, at the time of executing a will of all his other property, and with the expressed intent of conveying the property. See also note to *Fain* v. *Smith*, 14 Ore. 82, 12 Pac. 365, 58 Am. Rep. 293; *Bryan* v. *Wash*, 2 Gilman (Ill.) 557.

A case resembling the case in judgment is that of *Toms* v. *Owen* (C. C.), 52 Fed. 417. There the testator said: "I have heretofore executed and delivered to my beloved wife, Sarah Caroline Toms, a conveyance of all the property of which I shall die seized or possessed; and to avoid all accidents or questions that may arise, and for the purpose of giving expression to my wishes as to her use and disposition of the property so conveyed to her, this will is made, and I do therefore devise and bequeath to my beloved wife all the real and personal property of every name and nature and wheresoever situated, of which I shall die seized or pos-

sessed." It is there held that the recital in his will that he had executed and delivered to his wife such a conveyance, should be given its natural force and legal meaning, and in view of the other facts and circumstances should be held sufficient to establish delivery of the deed; and in that case the court referred to the fact that the testator was a lawyer of experience and inferred therefrom that it should be assumed that he knew the force and meaning of the terms he used with reference to that conveyance.

[13] So, in this case, the testator, W. P. Payne, was a lawyer, and therefore it is also inferred that when he in his will recited that he had "deeded" to his son the property involved, he intelligently and purposely used a word importing and expressing the finality of the transaction, knowing that there could be no valid conveyance unless the deed should be delivered before his death.

In *Foote* v. *Lichty*, 60 Ore. 542, 120 Pac. 398, this is quoted with approval from *Fain* v. *Smith, supra:* "The result of the authorities is that after a writing has been signed and sealed and acknowledged, any acts or words or circumstances decisive of the intention of the grantor to consummate and to part with it are sufficient to constitute a delivery and give it validity as a deed." *Martin* v. *Flaharty,* 13 Mont. 96, 32 Pac. 287, 40 Am. St. Rep. 415, 19 L. R. A. 242, supports the same rule.

In 18 C. J. 199, the authorities from many States are cited and thus summarized: "Nor is a manual delivery of the instrument to the grantee required, it being sufficient if it is apparent either from the words or acts of the grantor that it was his intention to treat the deed as his and to make a delivery of the same."

In 18 C. J. 201, note 42, this is quoted from *Huggard* v. *Ontario, etc., Land Co.,* 1 Sask. L. 526: "In *Xenos* v. *Wickham,* L. R. 2 H. L. 296, 14 C. B. N. S. 435, 108 E. C. L. 435, 143 Reprint 515, 13 E. R. C. 422, at p. 309, Pigott, B.,

7

quoting from *Doe* v. *Knight,* 5 B. & C. 671, 11 E. C. L. 632, 108 Reprint 250, 8 E. R. C. 580, states the following: 'Where an instrument is formally sealed and delivered and there is nothing to qualify the delivery but the keeping the deed in the hands of the executing party, nothing to show that he did not intend it to operate immediately, it is a valid and effectual deed, and the delivery to the party who is to take by it, or to any person for his use, is not essential'."

While the authorities agree in the general statements of the principles which control, they are not in accord in the application of these principles to the facts of particular cases. Indeed, it may be conceded that a very large number of modern cases from courts of the highest authority might be cited which are inconsistent with several of those herein referred to; but this from *Newton* v. *Bealer,* 41 Ia. 339, appeals to the reason, and has ample support in many adjudged cases: "Where one who has the mental power to alter his intention, and the physical power to destroy a deed in his possession, dies without doing either, there is, it seems to us, but little reason for saying that his deed shall be inoperative simply because during life he might have done that which he did not do. It is much more consonant with reason to determine the effect of the deed by the intention existing up to the time of death, than to refuse to give it that effect because the intention might have been changed." Note Ann. Cas. 1914-C, 860, where it is said that a testamentary reference to a voluntary conveyance is cogent evidence of delivery. *Wall* v. *Wall,* 30 Miss. 91, 64 Am. Dec. 147; *Bliss* v. *West,* 58 Hun. 71, 111 N. Y. S. 374.

No Virginia case, so far as we are advised, can be cited in which the precise question here involved was determined, but these have dealt with varying phases of the subject: *Skipwith's Ex'r* v. *Cunningham,* 8 Leigh (35 Va.) 283, 31 Am. Dec. 642; *Hutchison* v. *Rust,* 2 Gratt. (43 Va.) 394; *Harman* v. *Oberdorfer,* 33 Gratt. (74 Va.) 497; *Frank* v.

*Frank,* 100 Va. 629, 42 S. E. 666; *Schreckhise* .v. *Wiseman,* 102 Va. 9, 45 S. E. 745; *Leftwich* v. *Early,* 115 Va. 323, 79 . S. E. 384; *Mumpower* v. *Castle, ante.* .p. 1, 104 S. E. 706, this day decided.

[14] Our conclusion is that under the circumstances of . this case this testator, by the language of his will and his ` subsequent action in acknowledging the deed and placing it with his will, clearly indicated his intention to deliver it to C. C. Payne and to make it then operative as his deed. To ignore this intention and thus defeat his purpose, would be to discard fact for fancy and to substitute the shadow for the substance.

(b) It is to be observed, however, in this case, so far as the result is concerned, that it makes no difference whether the deed was delivered in the lifetime of the testator or not, because, as if to make assurance doubly sure, the testator clearly stated in his will that C. C. Payne was to have the property involved. It is as though the testator anticipated that this very controversy might arise, that the validity of the deed might be attacked after his death upon the ground that it had not been delivered, and therefore, to cover any interest which he might be adjudged to have in the property, he devised such possible interest to ·C. C. Payne in his will by language which fairly interpreted means that he has conveyed by deed, ·duly executed and delivered, to his son, C. C. Payne, the land he intends him to have (for the will speaks as of the time of his death), and that there may be no doubt as to the identity of the land which he intends him to have, the deed which describes it will be found with his will.

[15] It is shown in the recent case of *Chiles* v. *Bowyer,* 127 Va. 249, 103 S. E. 619, that a deed which had not been delivered and was, therefore, inoperative, might be relied on as a memorandum in writing of a contract for the sale and conveyance of certain land, which should be enforced;

citing *Bowles* v. *Woodson,* 6 Gratt. (47 Va.) 78; *Parrill* v. *McKinley,* T *Gratt.* (50 Va.) 1, 58 Am. Dec. 212; 1 Devlin on Real Estate (3d ed.), section 273c. So here, the deed, even if undelivered, may be referred to to identify the property devised by the will.

[16, 17] Of course, in construing the will, we must first ascertain the intention of the testator from the words used therein, and if this intention is manifest the will is effective. While the will does not specifically describe the land, parol evidence is always admissible to identify the subject of a devise or bequest, as well as the person who is the object of the testator's bounty. No citations are needed to support this proposition because it is everywhere accepted. The authorities are collected in a note to *Lomax* v. *Lomax,* 218 Ill. 629, 75 N. E. 1076, 6 L. R. A. (N. S.) 943, and the annotator there says that Judge Lee's opinion in the case of *Wootton* v. *Redd,* 12 Gratt. (53 Va.) 196, is perhaps the most lucid exposition of the subject in hand that can be found in the American reports.

That this testator intended C. C. Payne to have this property and manifested it in his will by language too clear and simple to be misunderstood must be apparent, and this is certainly all that is necessary to support a devise.

For the reasons expressed, our views accord with those of the trial court.

*Affirmed.*